UNITED STATES ex rel. Daniel
R. YESUDIAN, Plaintiff,

v.

HOWARD UNIVERSITY,
et al., Defendants.

Civil Action No. 93–1791 (HHG).

United States District Court,
District of Columbia.

Sept. 6, 1996.

James L. Kestell, Kestell & Associates, Falls Church, VA, for Plaintiff.

Timothy F. McCormack, Shapiro & Olander, Washington, D.C., for Defendants.

*MEMORANDUM AND ORDER*

HAROLD H. GREENE, District Judge.

Before the Court is defendants' motion for judgment as a matter of law pursuant to FED.R.CIV.P. 50(b), or, in the alternative, for a new trial pursuant to FED.R.CIV.P. 59, and plaintiff's motion for post-verdict equitable relief.

**I**

Plaintiff, Dr. Daniel Yesudian, worked at Howard University from 1971 to 1992. In 1983, after several promotions, he was transferred to Howard University's Purchasing Department, where he worked until his May 1992 termination. From 1984 to 1992, plaintiff repeatedly complained to upper level officers at Howard University about his supervisor, Mr. Parker, and about various alleged improprieties in the Purchasing Department.[1] On May 1, 1992, plaintiff was terminated from his job at Howard University by Parker.

Plaintiff then brought the instant action alleging violations of the False Claims Act, retaliation for reporting the alleged false claims, breach of contract, and various related claims. A jury trial was held from November 14 to 21, 1995, at the conclusion of which the jury returned a verdict in favor of

---

1. Plaintiff's allegations of improprieties included his concerns that individuals in the department were falsifying time and attendance records, providing "inside information" to selected vendors to aid them in the bidding process, accepting bribes from vendors, taking University property home, issuing orders to vendors without competition, and violating purchasing ethics.

plaintiff on two of his claims—(1) the claim against Defendant Parker for unlawful retaliation, *i.e.* termination, and (2) the claim against Howard University for breach of contract/promissory estoppel. The jury awarded plaintiff $180,000 in back pay, and stated that plaintiff should be awarded the option to have his termination stricken from his employment record and to retire as of May 1, 1992 in accordance with the rules in effect at Howard University as of May 1, 1992.[2] Defendant Parker challenges the jury's verdict against him on the retaliation claim and Howard University challenges the jury's verdict against it on the contract/promissory estoppel claim. Alternatively, both parties move for a new trial.

## II

■ The Court will grant a Rule 50 motion for judgment as a matter of law only if "the evidence, together with all inferences that can reasonably be drawn therefrom, is so one-sided that reasonable men could not disagree on the verdict." *Hayman v. National Academy of Sciences,* 23 F.3d 535, 537 (D.C.Cir.1994) (internal quotation and citations omitted). The question is whether there was sufficient evidence upon which a jury could properly base a verdict for plaintiff. *Richardson by Richardson v. Richardson–Merrell, Inc.,* 857 F.2d 823, 828–29 (D.C.Cir.1988), *cert. denied,* 493 U.S. 882, 110 S.Ct. 218, 107 L.Ed.2d 171 (1989).

## III

■ To find for plaintiff on his claim of retaliatory discharge in violation of 31 U.S.C. § 3730(h), the jury must have found that (1) plaintiff engaged in conduct protected under the False Claims Act, (2) Defendant Parker was aware of plaintiff's actions, and (3) plaintiff was terminated in retaliation for his conduct. *Mikes v. Strauss,* 889 F.Supp. 746, 752 (S.D.N.Y.1995). As the Court finds that there was no evidence from which the jury could reasonably have found that plaintiff proved the first or second elements of his

claim, Defendant Parker's motion will be granted.

■ Conduct protected by the False Claims Act ("FCA") includes:

lawful acts done by the employee on behalf of the employee or others in furtherance of an action under this section, including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section....

31 U.S.C. § 3730(h); *see also United States ex rel. Ramseyer v. Century Healthcare Corp.,* 90 F.3d 1514, 1522 (10th Cir.1996) (plaintiff's conduct must have been taken in furtherance of FCA enforcement action). Although intra-corporate complaints may constitute protected activity, such is not the case here. Plaintiff had been making the same allegations of improprieties since 1984. However, he never initiated a government investigation or a private qui tam suit. There was no evidence presented at trial from which the jury could find that plaintiff's complaints were those of an employee concerned that his employer was defrauding the federal government, rather than those of a disgruntled employee.

■ To prove the second element of his claim, plaintiff was required to present evidence from which the jury could reasonably find that defendant was on notice that "plaintiff was either taking action in furtherance of a private qui tam action or assisting in an FCA action brought by the government." *Century Healthcare Corp.,* 90 F.3d at 1522; *Robertson v. Bell Helicopter Textron, Inc.,* 32 F.3d 948, 951 (5th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1110, 130 L.Ed.2d 1075 (1995); *Mikes v. Strauss,* 889 F.Supp. at 753. Again, plaintiff had been making his allegations of improprieties since 1984. Plaintiff never suggested to defendant that he intended to utilize his allegations in furtherance of a False Claims Act action; gave no suggestion that he was going to report the alleged improprieties to government officials; and took no other steps which would put defendant on notice that he was acting in furtherance of a False Claims Act action. *Cf. Cen-*

---

**2.** As the parties agree that the jury did not have authority to award equitable relief, this portion

of the jury's verdict will be stricken.

*tury Healthcare Corp.,* 90 F.3d at 1522–23. At no time did plaintiff allege that defendant was defrauding the government. Nor did plaintiff ever assert that the alleged improprieties involved funds provided by the federal government.[3] Although plaintiff did present evidence showing that Parker knew that plaintiff complained to Mr. Fletcher about preferential treatment of employees and vendors in the Purchasing Department, there was absolutely no evidence presented from which the jury could have found that Parker believed that plaintiff was contemplating a qui tam suit against him or assisting the government in an investigation.

Defendant Parker's motion will accordingly be granted. *See United States ex rel. Hopper v. Anton,* 91 F.3d 1261, 1269–70 (9th Cir.1996) (holding that plaintiff failed to present evidence to support jury verdict on FCA retaliation claim because plaintiff never gave any indication that she was investigating school district for defrauding the federal government; although defendant may have engaged in retaliation for plaintiff's activities, there was no connection to the FCA); *cf. Robertson,* 32 F.3d at 951.

## IV

Defendant Howard University moves for judgment as a matter of law on plaintiff's breach of contract/promissory estoppel claim, arguing that (1) the employee handbook upon which this claim is based contains a prominent disclaimer which, as a matter of law, prevents any of the statements therein from rising to the level of a contractual obligation, and (2) even if the employee handbook could constitute a binding obligation, plaintiff neither gave additional consideration for, nor relied on, the alleged promises therein.

 Under District of Columbia law, the presumption is that employment for an unspecified time is terminable at will. *Simard v. Resolution Trust Corp.,* 639 A.2d 540, 551

(D.C.1994). However, an implied contract may arise from the language of an employee handbook. *Smith v. Union Labor Life Ins. Co.,* 620 A.2d 265, 269 (D.C.1993). Although the determination of whether an employee manual creates contractual rights in the employee is an issue for the jury, *Goos v. National Ass'n of Realtors,* 715 F.Supp. 2, 4 (D.C.1989), the legal effect of an employer's attempt to disclaim any such implied contract is, in the first instance, an issue for the Court. *Smith,* 620 A.2d at 269; *Goos,* 715 F.Supp. at 4.

Howard University points to two provisions in its employee handbook which it claims constitute, as a matter of law, an effective disclaimer of all contractual obligations. Defendant relies on the sentence on page ii of the handbook that "[t]his document is not to be construed as a contract," and on the statement on page 14 of the handbook that

> The University reserves the right unto itself to maintain exclusive discretion to exercise the customary functions of management including, but not limited to, the discretion to select, hire, promote, demote, suspend, terminate, assign the size of and composition of the work force, to establish, change and/or abolish policies, procedures, rules, and regulations; to create, abolish, and modify positions and descriptions and job classifications; and to assign duties of employees in accordance with the needs and requirements determined by the University.

When viewed in a vacuum, these disclaimers would seem to be sufficient. However, viewing them in conjunction with other provisions of the handbook, the Court adheres to the conclusion it arrived at during trial, that it is unable to rule as a matter of law that the disclaimers effectively nullified all contractual obligations.

Immediately preceding the statement that the handbook is not to be construed as a

---

**3.** For purposes of the False Claims Act, a "claim" is defined as including

> any request or demand, whether under a contract or otherwise, for money or property which is made to a contractor, grantee, or other recipient if the United States Government provides any portion of the money or

property which is requested or demanded, or if the Government will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded.

31 U.S.C. § 3729(c).

contract, appears the statement that the handbook is a "policy statement intended to promote a better understanding of what staff employees can expect from the University and what the University can expect from them in return." In addition, the provisions in the handbook relating to termination of employment are phrased in such a manner as to lead an employee to believe that the University does not have unfettered discretion in its termination decisions. Section 1.11 of the manual distinguishes between temporary and probationary employees on the one hand, and regular employees, such as the plaintiff here, on the other, stating:

> Temporary and Probationary employees may be terminated at any time their services are found to be unsatisfactory, or not in the best interests of the University. A Probationary employee may be terminated at any time during the probationary period upon the recommendation of the employee's supervisor. However, in the case of Regular employees, termination on grounds of unsatisfactory work performance is in order only when employees fail to make satisfactory improvement within thirty (30) calendar days after their supervisors have given them written notice of warning.... Charges against an employee of serious neglect of duty or conduct incompatible with the welfare of the University must be substantiated by the supervisor. Failure of the employee to refute successfully such charges constitutes grounds for dismissal.

Moreover, the handbook sets out a detailed grievance procedure and states that "[e]mployees of the University who are serving on Continuing Appointments[4] are *entitled* to provisions of the Grievance Procedures, under the conditions as indicated herein." § 1.16(D) (emphasis added). Nowhere does the manual state that a "Regular employee" may be terminated at will and for no reason at all.

Given the contradictory language of the manual provisions, the Court finds that the issue of whether the employee manual constituted a contract was an issue for the jury. *Cf. Woolley v. Hoffmann–La Roche, Inc.*, 99 N.J. 284, 491 A.2d 1257, 1265 (management's ability to change terms of employee manual does not prevent manual from being found to be a contract; "unless language contained in the manual were such that no one could reasonably have thought it was intended to create legally binding obligations, the termination provisions of the manual would have to be regarded as an obligation undertaken by the employer"), *modified on other grounds,* 101 N.J. 10, 499 A.2d 515 (1985).

Howard University next argues that judgment as a matter of law should be granted in its favor on the contract/promissory estoppel claim because plaintiff failed to present evidence showing that he gave any additional consideration[5] for the promises contained in the employee handbook or that he reasonably relied upon such promises to his detriment. Plaintiff contends that he need not show any particular reliance, but even if such a showing was required, he presented evidence to the effect that he reasonably relied on the handbook by continuing to work at Howard University without seeking employment elsewhere and by pursuing the grievance process with defendant rather than seeking employment elsewhere.

Plaintiff's contention in effect amounts to a reliance upon the theory of promissory estoppel. To prove his claim under this theory, plaintiff had to show (1) a promise by defendant, (2) reasonably induced reliance thereon, and (3) reliance by plaintiff on the promise was to his detriment. *Simard*, 639 A.2d at 552.

As stated above, the issue of whether the provisions of the employee handbook constituted a promise was properly submitted to the jury. Moreover, plaintiff presented evi-

---

4. An employee serving a "Continuing Appointment" is an employee, such as Dr. Yesudian, "who has successfully completed the required probationary period." Howard University Employee Handbook at p. ix.

5. There is no dispute that plaintiff did not receive an employee handbook until after he began working for Howard University. Plaintiff is therefore precluded from arguing that he accepted employment with defendant in reliance on the handbook's provisions.

dence that he relied on the handbook in pursuing the grievance procedure. He filed his complaint in the time and manner required, obtained legal representation, and pursued the full grievance procedure set out in the handbook.

■ Upon consideration of these facts, the Court concludes that the jury was justified in finding that plaintiff reasonably relied on the provisions of the employee handbook to his detriment in that he followed the handbook grievance procedures at the expense of much time and money.[6] Accordingly, defendant's motion for judgment as a matter of law on plaintiff's contract claim will be denied.[7]

## V

Plaintiff moves for post-verdict equitable relief, including reinstatement, double backpay, restoration of all benefits lost as a result of his termination, front pay, interest on backpay and future pay relating to pre- and post-judgment interest, attorneys' fees, and costs. Plaintiff's claim for equitable relief is based on the provisions of the False Claims Act retaliation provision. In light of the Court's decision to grant Defendant Parker's motion for judgment as a matter of law on the retaliation claim, plaintiff's motion will be denied.[8]

## VI

Consistent with the foregoing, judgment will be entered in favor of Defendant Parker on plaintiff's False Claims Act retaliation claim, and in favor of plaintiff in the amount of $180,000 on his contract claim against Defendant Howard University.[9]

Accordingly, it is this 6th day of September, 1996

ORDERED that Defendant Parker's motion for a directed verdict be and it hereby is granted as to plaintiff's False Claims Act retaliation claim; and it is further

6. Based on the Court's conclusion that the jury's verdict was justified under the theory of promissory estoppel, a theory on which the jury was instructed, the Court need not decide the merits of plaintiff's contention that he need not show any particular reliance. The Court notes, however, that there is a persuasive line of cases holding that when an employer promulgates an employee handbook that would indicate an intent to be bound by the provisions contained therein, an enforceable unilateral contract is formed, even when the employee does not provide additional consideration beyond continuing to perform his duties. *Panto v. Moore Business Forms, Inc.*, 130 N.H. 730, 547 A.2d 260, 264 (1988); *see also Duldulao v. St. Mary of Nazareth Hosp. Ctr.*, 115 Ill.2d 482, 106 Ill.Dec. 8, 12, 505 N.E.2d 314, 318 (1987) (employee's continued work constitutes consideration for promises in policy statement when promise is clear, policy statement is disseminated to employee in a manner such that employee is aware of contents and reasonably believes it to be an offer, and employee continues work after learning of policy statement); *Wooley*, 491 A.2d at 1268 (employee's continued services are sufficient acceptance and consideration for promise in employment manual, and reliance on such promise is to be presumed); *Pine River State Bank v. Mettille*, 333 N.W.2d 622, 629–30 (Minn.1983) (employee's retention of employment with knowledge of new or changed conditions constitutes acceptance of offer of unilateral contract); *cf. Small v. Springs Indus., Inc.*, 292 S.C. 481, 357 S.E.2d 452, 454 (1987) ("[h]aving announced the policy, presumably with a view to obtaining the benefit of improved employee attitudes and behavior and improved quality of the work force, the employer may not treat its promise as illusory") (internal citation and quotation omitted).

While the District of Columbia Court of Appeals has acknowledged the existence of this line of cases, it has yet to decide whether to adopt their view. *Rinck v. Association of Reserve City Bankers*, 676 A.2d 12, 17 (D.C.1996). The District of Columbia Court of Appeals has, however, recognized that there are special factors present in general personnel policy situations involving employee handbooks, *e.g.*, the employer may expect to benefit from better morale and a more cooperative attitude. *Id.* at 17 n. 5.

7. Since the Court will grant Defendant Parker's motion for a directed verdict on plaintiff's retaliation claim, it need not consider defendants' motion for a new trial, as defendants' arguments hinge on the jury's findings on that claim.

8. The Court notes, as an aside, its view that the $180,000 which plaintiff will receive on his contract claim is sufficient compensation for any injuries he suffered.

9. The parties concurred in the Court's instruction to the jury that if it found in favor of plaintiff on either his retaliation claim or his contract claim, it could award plaintiff damages in an amount sufficient to reasonably compensate plaintiff for defendants' conduct, and that this amount could include backpay and fringe benefits not received by plaintiff due to defendants' conduct.

ORDERED that Defendant Howard University's motion for a directed verdict be and it hereby is denied as to plaintiff's contract claim; and it is further

ORDERED that defendants' motion for a new trial be and it hereby is denied; and it is further

ORDERED that judgment be entered in favor of Defendant Parker on plaintiff's retaliation claim; and it is further

ORDERED that judgment be entered, consistent with the jury's verdict, in favor of plaintiff in the amount of $180,000 on plaintiff's contract claim against Defendant Howard University; and it is further

ORDERED that the jury's recommendation that plaintiff be awarded the option to have the termination stricken from his record and be allowed to retire as of May 1, 1992 in accordance with the rules in effect at Howard University at that time be and it hereby is stricken; and it is further

ORDERED that plaintiff's motion for post-verdict equitable relief be and it hereby is denied.