Marilyn ROBINSON, Plaintiff,

v.

JEWISH CENTER TOWERS,
INC., Defendant.

No. 97–2194–CIV–T–17(A).

United States District Court,
M.D. Florida,
Tampa Division.

Feb. 27, 1998.

Brian L. Weakland, Law Office of Brian L. Weakland, Tampa, FL, for Marilyn Robinson, Plaintiff.

Gail Golman Holtzman, Mark E. Levitt, Allen, Norton & Blue, P.A., Tampa, FL, for Jewish Center Towers, Inc., Defendant.

### *ORDER ON DEFENDANT'S MOTION TO DISMISS*

KOVACHEVICH, District Judge.

THIS CAUSE is before the Court on Defendant Jewish Center Towers' Motion to Dismiss the Plaintiff Marilyn Robinson's action for violations of the False Claims Act,

under 31 U.S.C. Section 3730(h), and the Florida Whistleblower's Act, Section 448.101, *et seq.,* pursuant to Federal Rule of Civil Procedure 12(b)(6). (Docket No. 6). The Plaintiff has filed a response in opposition to Defendant's Motion to Dismiss (Docket No. 7–8).

### FACTS

The complaint in this action was filed September 9, 1997. In addressing a motion to dismiss, the "facts" are limited to those facts pled in the cause of action, in this case the complaint. The relevant facts as pled may be summarized as follows:

Plaintiff, Marilyn Robinson (hereinafter Robinson), was an employee of Defendant, Jewish Center Towers, Inc. (hereinafter Towers), as a bookkeeper in the Defendant's Tampa, Florida, office. As bookkeeper, Robinson was responsible for recording accounts payable, entries and disbursements, accounts receivable, payroll, and compilation of monthly government compliance reports. Part of her duties was the monthly preparation of the section 8 subsidy report to the United States Department of Housing and Urban Development ("HUD"). In 1996, Towers instructed Robinson to prepare monthly income and expense reports, called "ABC" reports for HUD's review. Plaintiff alleges that the ABC reports prepared upon the instruction of Towers administrator, Juliet Massey, were false and fraudulent.

In particular, Towers' administrator's son was paid $10,000 by Towers for hours he did not perform from money, which Plaintiff alleges, that can be traced to the HUD subsidy. Plaintiff alleges that numerous checks were given to the administrator's son for hours he did not work partially using HUD monies. Plaintiff also states that these fraudulent payroll entries were approved by Towers' administrator for inclusion into Towers' financial statements and into the ABC reports to HUD. In November 1996, an independent auditor approved by HUD began to review fiscal year-end financial information of Towers and to submit an audit report to HUD. Robinson instructed the auditor to review the family members' time cards with the knowledge that they were not accurate and would not support the payroll amounts.

On January 10, 1997, the administrator told Robinson to issue a check to her son, which Robinson declined to issue as the money was for sick days that the son had not accrued. The auditor advised Towers' president of the impropriety. The president then told the administrator to put a freeze on all payroll adjustment checks. Based on the response of the administrator, the auditor told Robinson that "it looks like you lost your job." On January 28, 1997, the auditor presented her written recommendations to the board, which was the first formal airing of the improprieties.

On January 31, 1997, the administrator told Robinson that she was slow and under stress, and offered her the resident coordinator position where she would be a "backup bookkeeper". In February 14, 1997, the administrator issued a reprimand to Robinson because of her "repeated clocking-in in advance of your authorized work schedule," even though she was a salaried employee. On February 17, 1997, Robinson delivered a letter to the administrator in which she detailed in writing the payroll violations she reported to the HUD auditor. The same day, the administrator told Robinson that the Towers' board of directors authorized her to fire Robinson, and told Robinson to get out.

### STANDARD OF REVIEW

Plaintiff's complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of this claim that would entitle her to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In reviewing a motion to dismiss, the court is required to view that complaint in the light most favorable to the Plaintiff and accept all allegations as true. *Brooks v. Blue Cross and Blue Shield of Florida, Inc.,* 116 F.3d 1364, 1369 (11th Cir. 1997). While the court must accept all well-pleaded allegations in a complaint as true, the court will not accept, without more, conclusory allegations or legal conclusions masquerading as factual conclusions. *Desai v. Tire Kingdom, Inc.,* 944 F.Supp. 876 (M.D.Fla.1996).

## DISCUSSION

### COUNT I

The False Claims Act of 1986 provides in pertinent part:

> Any employee who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment by his or her employer because of lawful acts done by the employee on behalf of the employee or others in furtherance of an action under this section, including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section, shall be entitled to all relief necessary to make the employee whole. 31 U.S.C.A. § 3730(h).

█ In order to bring a claim of retaliatory discharge and violation of U.S.C. § 3730(h), the plaintiff must show that she engaged:

> (1) in conduct protected under the False Claims Act;
>
> (2) defendant was aware of the plaintiff's actions; and
>
> (3) plaintiff was terminated in retaliation for her conduct.

*Yesudian v. Howard University,* 946 F.Supp. 31 (D.D.C.1996) (*citing Mikes v. Strauss,* 889 F.Supp. 746, 752 (S.D.N.Y.1995)).

The Defendant's Motion to Dismiss alleges that the Plaintiff has failed to allege facts sufficient to establish a *prima facie* case of violation of the False Claim Act, 31 U.S.C. § 3730(h). In support of this allegation, the Defendant states that the Plaintiff has failed to allege that she was assisting the United States government in bringing a False Claims Act action. Defendant also mentions federal case law where the plaintiff either actually filed a *qui tam* action, or initiated an investigation by the government, and also formally reported the suspected conduct to his or her employer. *See Neal v. Honeywell,* Inc., 826 F.Supp. 266 (N.D.Ill.1993), *aff'd,* 33 F.3d 860 (7th Cir.1994); *U.S. ex rel Kent v. Aiello,* 836 F.Supp. 720 (E.D.Cal.1993); *Clemes v. Del Norte County Unified School District,* 843 F.Supp. 583 (N.D.Cal.1994).

█ In the complaint, Plaintiff, Robinson, states that she instructed an independent auditor approved by HUD to review the family members' time cards, because she knew that the time cards were not accurate, and did not support the payroll amounts (¶ 11, 12). HUD approved the independent auditor to review financial information of Towers and to submit an audit report to HUD. Viewing the complaint in the light most favorable to the Plaintiff and accepting all the allegations as true, it appears that the auditor was essentially a representative of HUD; and since the auditor was to submit a report to HUD, a jury might draw the conclusion that whatever discrepancies the auditor discovered in her review of the financial records, HUD would also be made aware of them. Moreover, the auditor told Robinson that she spoke to a HUD lawyer who told her to report her findings. The auditor also mentioned that the insurance company may file criminal charges. Additionally, she said she was sending a letter to the Inspector General in New Jersey and spoke to Robinson about appearing before HUD under oath and to give testimony. Accepting the foregoing facts as true, the Plaintiff has alleged enough facts for a jury to conclude that Robinson initiated a government inquiry when she instructed the auditor to review the family time cards for inaccuracies.

In *Childree v. UAP/GA AG CHEM, Inc.,* 92 F.3d 1140, 1146 (11th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 1080, 137 L.Ed.2d 216 (1997), the United States Court of Appeals established the "distinct possibility" test. In that case, the court held that " § 3730(h) protection is available not only where a false claims action is actually filed, but also where the filing of such an action, by either the employee or the government, was 'a distinct possibility' at the time the assistance was rendered." *Id.* The court also made it clear that § 3730 does not require an employee to be aware of the existence of the False Claim Act at the time he or she renders assistance to the government. *Id.* The plaintiff, Childree, refused to comply with a request to re-bill certain invoices because she believed the re-billing request was part of her employer's attempt to defraud the United States government. *Id.* at 1142. She then provided information about her employer's fraudulent rebillings to the ASCS official who visited the defendant's office as well as

another governmental agency. *Id.* Based on Childree's testimony, the government concluded that the defendant was falsifying documents. *Id.* The Childree court therefore held that "a § 3730(a) action was a distinct possibility at the time Childree rendered her assistance." *Id.*

In the present case Robinson refused to issue a check to the administrator's son because she believed that the administrator was funneling corporate and HUD funds to her family members for no business reasons. (¶ 12, 13, 14). She then told the HUD approved auditor to inspect the family members' time card for inconsistencies. The auditor told Robinson she was sending a letter to the Inspector General in New Jersey to report the improprieties, which she discovered with the help of Robinson. If those asserted facts are ultimately determined to be true, than a § 3730(a) action was a distinct possibility at the time Robinson rendered her assistance.

■ The Defendant, Towers, states that Robinson failed to allege a connection between her discharge and any conduct in furtherance of a qui tam or governmental False Claims Act action. In support of this allegation, Towers contends that Robinson has not alleged any facts showing that the Defendant had notice that the Plaintiff was intending to make a claim in furtherance of a False Claims Act action. Towers also discusses *United States ex rel Susan Ramseyer v. Century Healthcare Corporation,* 90 F.3d 1514 (10th Cir.1996) which relied on *Robertson v. Bell Helicopter,* 32 F.3d 948 (5th Cir. 1994), *cert. denied,* 513 U.S. 1154, 115 S.Ct. 1110, 130 L.Ed.2d 1075 (1995).

The court in *Ramseyer* stated that the relevant inquiry is "whether the actions alleged in the complaint could be reasonably described as an 'investigation' sufficient to put defendants on notice of a possible qui tam action." *Id.* at 1522. In *Ramseyer,* the plaintiff only advised her superiors of the noncompliance. In the case of *Robertson* as well, the plaintiff only voiced concerns to his superiors about the improprieties. *Id.* at 951 Towers further relies upon the case of *Yesudian v. Howard University,* 946 F.Supp. 31, (D.D.C.1996). Also in *Yesudian,* the plaintiff only voiced concerns about the improprieties to his superiors and gave no suggestion that

he was going to report the alleged improprieties to government officials. *Id.* at 33. Therefore, the relevant courts held that those plaintiffs did not engage in protected activities, because the employer was not put on notice.

In the present case, however, Robinson alleges a number of facts, which if found to be true, could be found to have put Towers on notice of a distinct possibility that Robinson was assisting the government in a possible False Claim Act action. As discussed earlier, the auditor was a representative of HUD since she was approved by HUD and was supposed to give a written report of her findings to HUD. Additionally, Robinson instructed the auditor to review the family members' time cards for inconsistencies. Robinson also refused to issue a check to the administrator's son because she believed it was aimed at defrauding the government. The auditor discussed the improprieties with Towers' president who instructed the administrator to put a freeze on all payroll adjustment checks.

The auditor told Robinson that "it looks like you lost your job," because of how the administrator responded to the president's instruction to freeze the payroll adjustment checks. Moreover, the auditor made it known to the president that Robinson felt that her job was in jeopardy. The auditor then presented her written recommendations to the board, which was the first formal airing of the improprieties. She then informed the administrator that Robinson intended to speak to an attorney regarding her involvement with Towers. Accepting the foregoing facts as true, a jury could find that Towers was put on notice that Robinson was assisting in an investigation, or that there was a distinct possibility that either Robinson or HUD could file a False Claim Act action. As such, Count I of the Complaint should not be dismissed for failure to state a claim on which relief may be granted.

### COUNT II

■ Defendant challenges Plaintiff's Count II complaint of a violation of the Florida Whistleblower's Act, § 448.103(1). Since this Court finds that Count I should not be

dismissed for failure to state a claim, Defendant's argument concerning pendent jurisdiction is therefore moot.

Towers claims that Robinson has failed, in her complaint, to allege that she was terminated by the Defendant, or that Towers took any retaliatory action against her as required by the statute. Section 448.103(1) of the Florida Statute states that "retaliatory personnel action" includes not only wrongful discharge, but also harassment, threats of demotion, and reprimand. Robinson's complaint states that she was threatened with a demotion as a "backup bookkeeper;" she was also told that she was slow and under stress which contradicts her prior performance evaluation. Moreover, she was issued a reprimand for starting work too early, even though she was a salaried employee, and she was eventually told to get out. Accepting these facts as true, a jury could find that Towers took retaliatory actions against Robinson.

Defendant states that Robinson's complaint should be dismissed because Florida Statute § 448.102(1) requires written notice while Robinson orally instructed the investigator to review the Defendant's time cards. There is a split among the Florida courts as to whether the writing requirements only applies to Section 448. 102(1), and not to subsections (2) and (3). The statutes requires that the employee disclosed or threatened to disclose to any appropriate governmental agency. Robinson's letter to the administrator could be viewed by a jury as a threat to disclose to the appropriate agency. Robinson's letter, which detailed in writing the payroll violations reported to the HUD auditor, also satisfied the Florida Whistleblower Act requirement that the employee report or disclose in writing any activities, policy or practice of the employer that is in violation of a law.

Towers also contends that the auditor is not a governmental agency. As discussed earlier, since the auditor was approved by HUD, and was to also report her findings directly to HUD, she essentially acted as a representative of HUD. It became inevitable that whatever improprieties she discovered, they would also be discovered by HUD.

Towers' final argument is that Robinson did not provide her employer with a reasonable opportunity to correct the illegal activity or practice. As discussed earlier, Robinson initiated the auditor inquiries into the time cards. The auditor then reported the improprieties to Towers' president who instructed the administrator to put a freeze on all payroll adjustment checks. The auditor then issued her written recommendations to the boards. Moreover, Robinson issued a letter to the administrator detailing the payroll violations she reported to the auditor. Towers' contention that Towers was not provided with a reasonable opportunity to correct the illegal activity or practice is therefore without merit. As such, Count II of the complaint should not be dismissed for failure to state a claim under the Florida Whistleblower Act.

### CONCLUSION

**ORDERED** that Defendant Towers's Motion to Dismiss the complaint (Docket No. 6) be denied in all respects and the defendant **shall have** ten (10) days from this date to answer the complaint.