Ex rel. G. Michael GUBLO and John L. Watts and G. Michael Gublo, Individually,

v.

NOVACARE, INC.

No. Civ.A. 95–11379–RGS.

United States District Court, D. Massachusetts.

Aug. 26, 1999.

## MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO DISMISS

STEARNS, District Judge.

In this *qui tam*[1] action, plaintiffs Michael Gublo and John Watts claim on behalf of the United States that defendant NovaCare, Inc., has repeatedly violated the False Claims Act (FCA), 31 U.S.C. §§ 3729–3733, by overbilling Medicare, Medicaid, and other federally funded

---

**1.** *Qui tam* is an abbreviation of the Latin phrase *qui tam pro domino rege quam pro si ipso in hac parte sequitur* which means "who sues on behalf of the King as well as for himself." BLACK'S LAW DICTIONARY 1251 (6th ed.1990).

health care programs for orthotics, prosthetics and other services. Plaintiffs also allege that NovaCare's lease arrangements with a group of referring physicians violate the "Stark Law" (42 U.S.C. § 1395nn). Gublo, a former NovaCare employee, also claims that NovaCare retaliated against him for "whistle blowing."

NovaCare moves to dismiss plaintiffs' Second Amended Complaint (Amended Complaint) contending that plaintiffs have no standing to pursue this action (having suffered no injury in fact), that the *qui tam* provisions of the FCA are unconstitutional, and that violations of the Stark Law do not implicate the FCA.[2]

## BACKGROUND

The facts alleged in the Amended Complaint, which for present purposes must be deemed true, are as follows. NovaCare is a publicly owned company that provides physical, occupational and speech therapy to nursing home patients. NovaCare's Orthotics & Prosthetics Services Division manufactures and distributes orthotic and prosthetic devices. A NovaCare orthotist or prosthetist fits a patient in accordance with the instructions of the patient's referring physician. NovaCare then bills either the patient's private insurer, or if the patient is eligible, a federally funded healthcare program like Medicare or Medicaid.

Plaintiff Michael Gublo was employed as an orthotist by NovaCare from October of 1993 until June 26, 1995. According to the Amended Complaint, NovaCare's Orthotics & Prosthetics Services Division routinely submitted inflated invoices to the federal government and created false records to provide ostensible justification for the overcharges.[3] As a result, NovaCare systematically billed private insurers, Medicare, Medicaid, the Civilian Health and Medical Program of Uniformed Services (CHAMPUS), and the Federal Office of Personnel Management, among others.

The violations alleged in Count I of the Second Amended Complaint fall into five categories: (1) false claims for orthotics payments (Amended Complaint ¶¶ 12 and 13); (2) false claims for prosthetics payments (id., at ¶ 14); (3) false claims for payments for other unspecified NovaCare services (id., at ¶ 15); (4) overstatement by NovaCare of its true fees (id., at ¶ 16); and (5) unlawful lease kickbacks to referring physicians (id., at ¶¶ 18 to 22).

With regard to orthotic devices, plaintiffs allege that NovaCare routinely charged for more expensive devices while fitting patients with less expensive ones.[4] Plaintiffs identify, by payer, date and practitioner, twenty-nine such instances of overbilling. Id., at ¶ 13. Plaintiffs also allege that NovaCare billed the fed-

---

2. Plaintiffs' Second Amended Complaint contains two counts: Count I—Violations of the FCA (31 U.S.C. § 3729); and Count II—Violation of FCA (31 U.S.C. § 3730(h)) (whistle blower provisions of the FCA).

3. The FCA provides, in relevant part:
 (a) Liability for certain acts. Any person who (1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government ... a false or fraudulent claim for payment or approval ...; [or] (2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government ... is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages which the Government

sustains because of the act of that person....
§ 31 U.S.C. 3729(a)(1), (2).

4. For example, when NovaCare practitioners provided the less expensive Posterior Leaf Spring AFO, a device designed to support chronically weak ankles or to address other ankle problems, NovaCare billed for the more expensive Solid Ankle AFO. Plaintiffs make similar allegations with respect to the Dorsi Flexion and Plantar Flexion Assist/Resist AFO versus the Limited Motion Ankle Joint AFO; the Molded Patient Model Thoracic Lumbar Sacral Orthoses (TLSO) versus the Custom Fit TLSO; Custom Orthopedic Footwear, Depth Inlay versus the Custom Orthopedic Footwear, Prosthetic Shoe; and Prefabricated, Custom Fit Shoe Inserts versus Molded Shoe Inserts. Amended Complaint ¶ 12.

eral government for prosthetic feet that were not provided, for ultra-light metal products when cheaper aluminum models were substituted, and for total contact knee sockets when patients received less expensive conventional knee sockets. Id., at ¶ 14. Plaintiffs base these allegations on "observations of prosthetist Ken Roteir during 1994–1995 at NovaCare's Greenland and Somersworth facilities, [and] Gublo's conversations with other NovaCare prosthetists," on NovaCare's billing for Gublo's own prosthesis, and on NovaCare's internal billing forms which are said to have been designed to generate billings for unnecessary services. Id. Plaintiffs also allege that NovaCare inflated its fee schedules to circumvent Medicare's 80% reimbursement rule.[5] This allegation is based upon NovaCare's practice of discounting fees to large private insurers by as much as 25% below its certified Medicare schedule. Id., at ¶ 16A.

Finally, plaintiffs allege that NovaCare paid excessive rents in exchange for physician referrals. According to the Amended Complaint, NovaCare paid Orthopedic and Trauma Specialists (OATS) more than $3,000 per month to lease 1,400 square feet in Somersworth, New Hampshire, a rent more than double the prevailing market rate. Plaintiffs also assert that NovaCare had the option of canceling the lease if referrals of OATS patients fell below an agreed minimum. Id., at ¶ 20A.

In Count II of the Amended Complaint, plaintiffs contend that on March 15, 1995, Gublo contacted James Alimo, NovaCare's vice-president for clinical services, to complain about NovaCare's billing practices. At Alimo's request, Gublo drafted a memorandum detailing his allegations. On March 27, 1995, Alimo informed Gublo that he was investigating the charges, and asked Gublo to fax some additional records. Two months later, Gublo was informed that he would be transferred from NovaCare's Somersworth office to a less desirable location. Gublo alleges that the transfer was in retaliation for his "whistle-blowing."

## DISCUSSION

When reviewing a motion to dismiss, "[w]e must accept the allegations of the complaint as true, and if, under any theory, the allegations are sufficient to state a cause of action in accordance with the law, we must deny the motion to dismiss." *Vartanian v. Monsanto Company,* 14 F.3d 697, 700 (1st Cir.1994).

## CONSTITUTIONAL ISSUES

### Standing

 NovaCare argues that the plaintiffs lack standing to bring an action under the FCA because they have suffered "no injury in fact." Defendant's Memorandum, at 6–8. NovaCare relies on a passage in *Steel Company v. Citizens for a Better Environment,* 523 U.S. 83, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998), which holds that

the "irreducible constitutional minimum of standing" contains three requirements. First and foremost, there must be alleged (and ultimately proved) an "injury in fact"—a harm suffered by the plaintiff that is "concrete" and "actual or imminent, not 'conjectural' or 'hypothetical.'" Second, there must be causation—a fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant. And third, there must be redressability—a likelihood that the requested relief will redress the alleged injury. This triad of injury in fact, causation, and redressability constitutes the core of Article III's case-or-controversy requirement, and the party invoking federal jurisdiction bears the burden of establishing its existence.

---

5. Pursuant to 42 C.F.R. § 414.21, Medicare pays for prosthetics and orthotics at 80% of the lesser of (1) the actual charge for the device; or (2) the fee schedule amount for the device.

*Id.,* at 102–104, 118 S.Ct. 1003 (internal citations omitted). Because plaintiffs, assuming the truth of their allegations, can point to no harm that they personally suffered (putting aside the retaliation claim), but only harm accruing to the United States, they are not, so the argument goes, the proper parties to bring this lawsuit. The United States, in an *amicus curiae* brief, contends that the plaintiffs satisfy the requirements of standing, as they have alleged in a representative capacity a real injury to the United States, while also having, under the *qui tam* provisions of the FCA, a personal stake in the outcome of the litigation. "Authority for the proposition that such *qui tam* statutes meet the constitutionality requirements of standing is 'endless,' including every circuit court to address the issue and numerous district courts." United States Memorandum, at 5.

NovaCare's reliance on *Steel* is misplaced. In *Steel,* an environmental group sued an alleged polluter under the Emergency Planning and Community Right–to–Know Act (EPCRA), 42 U.S.C. § 11046(a)(1), for failing to file annual reports detailing the use of toxic and hazardous chemicals. Because the citizens group had no personal stake in the outcome of the litigation, in the sense that EPCRA consigns civil penalties exclusively to the United States Treasury, the Court held that the group could not satisfy the "redressability" component of standing. *Steel,* 523 U.S. at 106–107, 118 S.Ct. 1003. While EPCRA permits the award of a plaintiff's costs of prosecution, "a plaintiff cannot achieve standing to litigate a substantive issue by bringing suit for the cost of bringing suit." *Id.* at 107, 118 S.Ct. 1003. Here, by contrast, plaintiffs are specifically authorized by the FCA to share in any recovery accruing to the government, as is the case with other federal statutes which look to reward citizen initiative as

an enforcement tool. See 5 U.S.C. § 552(a)(4)(E) (Freedom of Information Act); 42 U.S.C. § 3613(c)(2) (Fair Housing Act); 42 U.S.C. § 9659(f) (CERCLA).

NovaCare relies on the one case that has held that a *qui tam* plaintiff cannot, as a matter of law, satisfy the injury-in-fact requirement of Article III. In *United States ex rel. Riley v. St. Luke's Episcopal Hospital,* 982 F.Supp. 1261, 1265 (S.D.Tex. 1997), Judge Hoyt held that Congress's assignment of "the government's inchoate 'interest' in future lawsuits to unnamed, future plaintiffs" was ineffective, and that the *Riley* plaintiff (as here, a medical worker alleging Medicare and Medicaid fraud) therefore had no standing to bring a *qui tam* action under the FCA. Judge Hoyt reasoned that Congress had no "right" to the property interest at stake (the right to initiate and maintain prosecutions belongs rather to the Executive Branch) and thus no power to assign that right. Moreover, even if Congress did, the law would not recognize a promise to make a future assignment to a plaintiff then unknown to Congress as binding.[6] *Id.*

While *Riley* is an intriguing opinion, every other court that has considered challenges to a relator's standing under the FCA has rejected similar arguments. Many courts have held that because the relator is authorized by the FCA to act as the government's representative or agent, he or she is in effect clothed with the government's indisputable standing as the real party in interest. See *Searcy v. Philips Electronics North America Corp.,* 117 F.3d 154, 157 (5th Cir.1997); *United States ex rel. Berge v. Board of Trustees,* 104 F.3d 1453, 1457 (4th Cir.1997); *United States ex rel. Hall v. Tribal Development Corp.,* 49 F.3d 1208 (7th Cir.1995); *United States ex rel. Taxpayers Against Fraud v. General Electric Co.,* 41 F.3d 1032 (6th Cir.1994); *United States ex rel. El Amin*

**6.** In a concluding footnote, Judge Hoyt alluded to "serious constitutional concerns" raised by the Appointments Clause and the Separation of Powers doctrine, but having disposed of the case on standing grounds, thought it unnecessary to rule explicitly on the constitutionality of the FCA's *qui tam* provisions. *Id.* at 1269 n. 5.

*v. George Washington University*, 26 F.Supp.2d 162, 166 (D.D.C.1998); *United States Dept. of Housing and Development ex rel. Givler v. Smith*, 775 F.Supp. 172 (E.D.Pa.1991); *United States ex rel. Truong v. Northrop Corp.*, 728 F.Supp. 615, 619 (C.D.Cal.1989). The Ninth Circuit, taking a different tack, is a proponent of the assignment theory rejected by Judge Hoyt. See *United States ex rel. Kelly v. Boeing Co.*, 9 F.3d 743, 749 (9th Cir.1993). A more recent Second Circuit case espouses a hybrid view (similar to that urged here by the United States) that the relator derives standing both as the government's representative and as a party with a personal stake in the outcome of the litigation.[7] See *United States ex rel. Stevens v. Vermont Agency of Natural Resources*, 162 F.3d 195, 221–223 (2nd Cir. 1998).

I am of the majority view that a relator has Article III standing under the FCA because he or she is acting as the agent or representative of the government. A quasi-agency relationship is inherent in the *qui tam* provisions of the FCA which vest broad powers in the government to appropriate and/or control a privately-brought lawsuit whenever and however the government chooses.

> The action shall be brought in the name of the Government. The action may be dismissed only if the court and the Attorney General give written consent to the dismissal and their reasons for consenting.... [After reviewing the relator's Complaint] the Government may elect to intervene and proceed with the action within 60 days after it receives both the complaint and the material evidence and information. The Government may, for good cause shown, move the court for extensions of the time during which the complaint remains under seal.... If the Government proceeds with the action, it shall have the primary responsibility for prosecuting the action, and shall not be bound by an act of the person bringing the action. Such person shall have the right to continue as a party to the action, subject to the limitations set forth in paragraph (2).
>
> (2)(A) The Government may dismiss the action ·notwithstanding the objections of the person initiating the action if the person has been notified by the Government of the filing of the motion and the court has provided the person with an opportunity for a hearing on the motion.
>
> (B) The Government may settle the action with the defendant notwithstanding the objections of the person initiating the action if the court determines, after a hearing, that the proposed settlement is fair, adequate, and reasonable under all the circumstances....
>
> (C) Upon a showing by the Government that unrestricted participation during the course of the litigation by the person initiating the action would interfere with or unduly delay the Government's prosecution of the case, or would be repetitious, irrelevant, or for purposes of harassment, the court may, in its discretion, impose limitations on the person's participation ...
>
> (3) If the Government elects not to proceed with the action, the person who initiated the action shall have the right to conduct the action. If the Government so requests, it shall be served with copies of all pleadings filed in the action and shall be supplied with copies of all deposition transcripts (at the Government's expense). When a person proceeds with the action, the court, without limiting the status and rights of the person initiating the action, may nevertheless permit the Government to intervene at a later date upon a showing of good cause.

---

**7.** "The relators' personal stake derives from three factors: (1) the *qui tam* plaintiff must fund the prosecution of the FCA suit; (2) the *qui tam* plaintiff receives a sizable bounty if he prevails in the action; and (3) the *qui tam* plaintiff may be liable for costs if the suit is frivolous." *El Amin*, 26 F.Supp.2d at 166 (citations omitted).

(4) Whether or not the Government proceeds with the action, upon a showing by the Government that certain actions of discovery by the person initiating the action would interfere with the Government's investigation or prosecution of a criminal or civil matter arising out of the same facts, the court may stay such discovery for a period of not more than 60 days. Such a showing shall be conducted in camera. The court may extend the 60–day period upon a further showing in camera that the Government has pursued the criminal or civil investigation or proceedings with reasonable diligence and any proposed discovery in the civil action will interfere with the ongoing criminal or civil investigation or proceedings.

(5) Notwithstanding subsection (b), the Government may elect to pursue its claim through any alternate remedy available to the Government, including any administrative proceeding to determine a civil money penalty. If any such alternate remedy is pursued in another proceeding, the person initiating the action shall have the same rights in such proceeding as such person would have had if the action had continued under this section.

31 U.S.C. § 3730. See also *Juliano v. Federal Asset Disposition Ass'n,* 736 F.Supp. 348 (D.D.C.1990) (holding that the FCA permits the government to dismiss a *qui tam* complaint over the plaintiff's objection). Thus, NovaCare's motion to dismiss for lack of standing will be *DENIED.*

### Appointments Clause

■ NovaCare also attacks the FCA as contravening the Appointments Clause, art II, § 2, cl. 2. The Appointments Clause provides:

[The President] shall nominate, and by and with the Advice and Consent of the Senate, shall appoint Ambassadors, other public ministers and Consuls, Judges of the Supreme Court, and all other officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law; but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments.

The United States persuasively counters that the FCA's *qui tam* provisions are captioned "Actions By Private Persons" and provide that "a [private] person may bring a civil action for the person and for the United States Government." 31 U.S.C. § 3730(b)(1). These designated litigants are not "Officers of the United States" and the limited powers granted to them by the FCA are "not so significant that only officers may exercise it." *Kelly,* 9 F.3d at 757–759. See also *Taxpayers Against Fraud,* 41 F.3d at 1041; *El Amin,* 26 F.Supp.2d at 169–170. NovaCare's motion to dismiss on this ground will therefore also be *DENIED.*

### Separation of Powers

■ NovaCare next contends that the FCA, by permitting a citizen suit to be brought in the name of the government and to proceed even when the government declines to intervene, illegally divests the Executive Branch of its duty to enforce the laws. Not surprisingly, this argument has been rejected by every court that has considered it. Because the FCA authorizes the government to freely appropriate a *qui tam* action or to intervene at any stage of the litigation to dismiss the suit if it deems the interests of the United States to so require, there is no delegation by Congress of the Executive power, merely a conferral of discretion on Executive Branch officials to decide whether, when, and how to intervene. See 31 U.S.C. § 3730(c)(3). See also *Searcy,* 117 F.3d at 158–160 (confirming the government's veto power over the settlement terms of an FCA lawsuit even where it has declined to intervene); *Taxpayers Against Fraud,* 41 F.3d at 1041 (noting that the FCA was "crafted with particular care to maintain the primacy of the Executive Branch in

prosecuting false claims actions"); *Kelly*, 9 F.3d at 749–757 (determining that the FCA provides the government with sufficient control over the conduct of the relator to ensure that the Executive Branch can perform its constitutionally assigned duties). NovaCare's motion to dismiss on Separation of Powers grounds will thus also be *DENIED*.

### PARTICULARITY

■ Where fraud is alleged, Fed. R.Civ.P. 9(b) requires "the circumstances constituting fraud ... shall be stated with particularity."

> Claims brought under the FCA must comply with Rule 9(b). At a minimum, Rule 9(b) requires that a plaintiff set forth the "who, what, when, where, and how" of the alleged fraud. Thompson argues, however, that the pleading requirements of Rule 9(b) are relaxed where, as here, the facts relating to the alleged fraud are peculiarly within the perpetrator's knowledge. Although we have held that fraud may be pled on information and belief under such circumstances, we have also warned that this exception "must not be mistaken for license to base claims of fraud on speculation and conclusory allegations." In addition, even where allegations are based on information and belief, the complaint must set forth a factual basis for such belief.

*U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir.1997) (citations omitted).

NovaCare complains that plaintiffs fail to allege many of their claims with particularity. I agree. Plaintiffs do allege with specificity twenty-nine instances of fraudulent billings for orthotics. With respect to prosthetics, however, the plaintiffs simply allege three methods by which NovaCare is said to have inflated its bills to the government, without citing a single instance of a false claim. Plaintiffs say that their belief that NovaCare overcharged for prosthetics is based upon Gublo's observations and conversations, but fail to provide the "who what, when, where and how" of these "observations" and "conversations." [8]

In ¶ 15 of the Amended Complaint, plaintiffs suggest a financial motive for NovaCare's overcharges for "other services," but fail to specify what those "other services" were, and fail to identify a single false claim related to those services. In this same paragraph, plaintiffs contend that NovaCare overstated its Medicare fee schedule to offset the 20% discount built into government reimbursement regulations. See 42 C.M.R. § 414.21. To substantiate this allegation, plaintiffs contend that

> NovaCare gives so many substantial customer discounts to customers other than Medicare, however, that NovaCare's "actual charge" for purposes of determining Medicare reimbursement must, in many cases, be deemed to be below the fee schedule amount. For example, if a orthotic L-code has a Medicare fee schedule amount of $1,000, NovaCare *may* routinely charge its customers 25% less than the fee schedule amount, or $750. In such a case, NovaCare's "actual charge" for Medicare purposes should be deemed to be $750, and Medicare should reimburse NovaCare for 80 percent of $750 (rather than 80 percent of $1,000) because NovaCare's actual charge is less than the fee schedule amount.

Amended Complaint ¶ 16 (emphasis added). However, the relators fail to point to any section of the regulations that requires NovaCare to factor discounts given to private insurers into the determination of its "actual charges" for government billing purposes. Thus, this allegation and those regarding the overbilling of prosthetics do not meet the pleading requirements of

---

**8.** Gublo states that his own prosthesis was overbilled to his insurer U.S. Healthcare. Amended Complaint ¶ 14. As U.S. Health-care is not a federally funded entity, Gublo's personal experience cannot form the basis of an FCA claim.

Rule 9(b) and will be *DISMISSED.* NovaCare's motion to dismiss the orthotics claims set out in ¶¶ 11 through 13 of the Second Amended Complaint will however, be *DENIED.*

## THE STARK LAW

■ Count I also alleges that to induce patient referrals from OATS, NovaCare paid OATS twice the market rate to lease commercial space from OATS. Plaintiffs maintain that this violation of the Stark Law, 42 U.S.C. § 1395nn, constitutes an FCA violation.[9] Plaintiffs allege that

> as a condition of its participation in the Medicare program, NovaCare has been required to certify in annual cost reports that the services identified therein were provided in compliance with the laws and regulations regarding the provisions of healthcare services,—laws and regulations which include 42 U.S.C. § 1395nn(e)(1), 42 C.F.R. § 1001.952(b) and 42 U.S.C. § 1320a–7b(b).

Amended Complaint ¶ 18. NovaCare counters that its lease arrangements with OATS do not involve government funds, and therefore cannot be prosecuted under the FCA.

■ A number of courts, however, have recognized that the submission of a false certification of compliance with the Stark Law in order to qualify for Medicare reimbursement can constitute a false claim under the FCA. *Thompson,* 125 F.3d at 902; *United States ex rel. Pogue v. American Healthcorp, Inc.,* 914 F.Supp. 1507, 1513 (M.D.Tenn.1996); *United States ex rel. Roy v. Anthony,* 914 F.Supp. 1504, 1506 (S.D.Ohio 1994). In *Thompson,* the court held that

> the FCA imposes liability not only on any person who submits a false or fraudulent claim for payment, but also on any

person who knowingly makes a false statement in order to get a false or fraudulent claim paid.

125 F.3d at 903. The court in *Pogue,* considering facts very similar to those here, concluded that the language of the FCA and its legislative history demonstrate that

> the False Claims Act was intended to govern not only fraudulent acts that create a loss to the government but also those fraudulent acts that cause the government to pay out sums of money to claimants it did not intend to benefit. The Act's legislative history supports this holding. It states that "each and every claim submitted under a contract, loan guarantee, or other agreement which was originally obtained by means of false statements or other corrupt or fraudulent conduct, or in violation of any statute or applicable regulation, constitutes a false claim." S.Rep. No. 345, 99th Cong., 2d Sess. 4 (1986), reprinted in 1986 U.S.C.C.A.N. 5266, 5274.... [C]laims may be false even though the services are provided as claimed if, for example, the claimant is ineligible to participate in the program.

*Pogue,* 914 F.Supp. at 1513. If payment of NovaCare's Medicare or Medicaid claims for services rendered to OATS patients was conditioned on NovaCare's false certifications, or if the false certifications were made for the purpose of inducing payment from the government, then plaintiffs properly allege a violation of the FCA. *Id.,* at 1513. Thus, NovaCare's motion to dismiss plaintiffs allegations contained in ¶¶ 18 through 21 of the Amended Complaint will be *DENIED.* Paragraph 22 of the Amended Complaint goes on to allege, on information and belief, that NovaCare was

---

**9.** Stark II became effective January 1, 1995, and prohibits physicians from referring Medicare patients to an entity for certain "designated health services" if the referring physician has a nonexempt "financial relationship" with such entity. 42 U.S.C. § 1395nn(a)(1), (h)(6). Like its predecessor, Stark II provides

that the entity may not present or cause to be presented a Medicare claim for services furnished pursuant to a prohibited referral, and expressly prohibits payment of Medicare claims for services rendered in violation of its provisions. 42 U.S.C. § 1395nn(a)(1), (g)(1).

involved in similar illegal kickback schemes with other referring physicians. Plaintiffs concede that this allegation falls short of the requirements of Fed.R.Civ.P. 9(b), but insist that they are excused from compliance because the proof of such arrangements is in the exclusive control of NovaCare. While the pleading requirements of Rule 9(b) are relaxed where "the facts relating to the alleged fraud are peculiarly within the perpetrator's knowledge," plaintiffs must, at a minimum, "set forth a factual basis for such belief." *Thompson,* 125 F.3d at 903. Plaintiffs assert that Gublo's information that this rental arrangement was negotiated at the highest levels of NovaCare's management permits the inference that the OATS' lease was typical of NovaCare's lease arrangements with other physicians groups. This high order of speculation exceeds even the most liberal grant of flexibility under Rule 9(b). The claims alleged in Paragraph 22 will therefore be *DISMISSED.*

### COUNT II—RETALIATION

■ The FCA whistle blower provision provides that

[a]ny employee who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment by his or her employer because of lawful acts done by the employee on behalf of the employee or others in furtherance of an action under [the FCA], including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section shall be entitled to all relief necessary to make the employee whole.

31 U.S.C. § 3730(h).

NovaCare argues that Gublo cannot bring a claim under § 3730(h) because he never put NovaCare on notice that he intended to pursue a *qui tam* action, or was acting in furtherance of an action already filed. See *United States ex rel. Ramseyer v. Century Healthcare Corp.,* 90 F.3d 1514, 1522 (10th Cir.1996). Gublo

urges the court to reject "a narrow interpretation of the statute ... that the FCA only protects employees from retaliation where the employer has actual notice that the employee is acting with the specific intent to further a claim under the FCA." Plaintiffs' Memorandum, at 8.

Courts have generally delineated three elements for establishing a § 3730(h) claim: (1) the employee must be engaged in conduct protected by the statute, (2) the employer must know the employee was engaging in such protected conduct, and (3) the employer must have discriminated against the employee because of this protected conduct. See *Zahodnick v. International Business Machines Corp.,* 135 F.3d 911, 913–14 (4th Cir.1997) (citing *X Corp. v. Doe,* 816 F.Supp. 1086, 1095 (E.D.Va.1993)); *[United States ex rel.] Hopper v. Anton,* 91 F.3d 1261, 1269 (9th Cir.1996); *United States ex rel. McKenzie v. BellSouth Telecommunications, Inc.,* 123 F.3d 935, 944 (6th Cir.1997); *Robertson v. Bell Helicopter Textron, Inc.,* 32 F.3d 948, 951 (5th Cir.1994); *Neal v. Honeywell, Inc.,* 942 F.Supp. 388, 394 (N.D.Ill.1996); *Mikes v. Strauss,* 889 F.Supp. 746, 752 (S.D.N.Y.1995). It is important to note, however, that term "protected conduct" is interpreted more narrowly when applied to FCA claims than to common or state law retaliatory discharge actions. In a *qui tam* action, the plaintiff must demonstrate that her investigation, inquiries, and/or testimony were directed at exposing a fraud upon the government.

*Luckey v. Baxter Healthcare Corp.,* 2 F.Supp.2d 1034, 1050 (N.D.Ill.1998). Thus, for Gublo to recover on his whistle blower claim, he must establish three things: (1) his investigation into overbilling was related to deterring or exposing NovaCare's alleged fraud against the government; (2) NovaCare knew or was put on notice of Gublo's investigation; and (3) NovaCare discharged or harassed Gublo as a result.

For purposes of this motion, it must be presumed that Gublo can demonstrate that when he reported his overbilling concerns to NovaCare, he was seeking to "expose a fraud upon the government." *Hopper,* 91 F.3d at 1269. Gublo states that he told Alimo, NovaCare's vice president of clinical services, about his concerns and, at Alimo's request, provided corroborating evidence. Gublo contends that his complaints to Alimo constituted actual notice to NovaCare of his intentions. "Gublo's investigation and reporting of his findings to defendant were not part of his responsibilities as an orthotist. From the allegations in the Complaint it can be inferred that defendant knew Mr. Gublo was conducting an investigation into overbilling that was not part of his job responsibilities." Plaintiffs' Opposition Memorandum, at 11.

A defendant, however, must also be made aware that "plaintiff was either taking action in furtherance of a private *qui tam* action or assisting in an FCA action brought by the government." *United States ex rel. Yesudian v. Howard University,* 946 F.Supp. 31, 33 (D.D.C.1996). The notice can be express or implicit. *Luckey,* 2 F.Supp.2d at 1054. In *Yesudian,* the relator repeatedly complained to school officials about improprieties committed by the school purchasing department. However,

> [p]laintiff never suggested to defendant that he intended to utilize his allegations in furtherance of an [FCA] action; gave no indication that he was going to report the alleged improprieties to government officials; and took no other steps which would put defendant on notice that he was acting in furtherance of an [FCA] action. At no time did plaintiff allege that defendant was defrauding the government. Nor did plaintiff ever assert that the alleged improprieties involved funds provided by the federal government.

*Id.,* 946 F.Supp. at 33–34 (citations omitted). Gublo maintains that, unlike the plaintiff in *Yesudian,* he explicitly referred to fraud upon the government in his complaint to Alimo. In a case similar to this one, *Mikes v. Strauss,* 889 F.Supp. 746 (S.D.N.Y.1995), Judge Connor found that when an employee confronted her employer with accusations that it had charged Medicare for unnecessary tests, her allegations were sufficiently pointed to put the employer on notice than she was contemplating a *qui tam* action. *Id.,* at 753–754. Drawing all inferences in Gublo's favor, as I must, one might reasonably find that NovaCare knew, or should have known, that Gublo was seeking to vindicate a government interest, and that the FCA would be his likely weapon of choice.

NovaCare has not addressed the issue whether Gublo's transfer was sufficiently onerous to rise to the level of harassment or constructive discharge. Because the facts as plead make out a prima facie case of retaliation, NovaCare's motion to dismiss Count II of the Amended Complaint will be *DENIED.*

### ORDER

NovaCare's motion to dismiss the plaintiffs' Amended Complaint for lack of standing or as violative of the United States Constitution is *DENIED.* NovaCare's motion to dismiss the plaintiffs' claims contained in ¶¶ 11 through 13, 18 through 21 and Count II of the Amended Complaint is also *DENIED.* NovaCare's motion to dismiss the plaintiffs' claims contained in ¶¶ 14 through 17, and ¶ 22 of the Amended Complaint is *ALLOWED.*

SO ORDERED.