United States Court of Appeals,

Fifth Circuit.

No. 93-1789.

George S. ROBERTSON, Plaintiff-Appellant,

v.

BELL HELICOPTER TEXTRON, INC., Defendant-Appellee.

Sept. 26, 1994.

Appeal from the United States District Court for the Northern District of Texas.

Before POLITZ, Chief Judge, and DAVIS and WIENER, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Plaintiff, a former employee of Bell Helicopter Textron, Inc. ("Bell"), sued Bell under 31 U.S.C. § 3730(h) alleging that he had been discharged in retaliation for investigating possible overcharging of the United States Government. He also asserted a state law claim for wrongful discharge for refusing to perform an illegal act. The jury returned a verdict for plaintiff on the federal claim, but the district court granted Bell's motion for judgment as a matter of law. We affirm.

I.

George Robertson was employed by Bell as a senior contract administrator in Department M-1 of its Army Helicopter Improvement Program ("AHIP"). In that position, Robertson was responsible for ensuring that AHIP costs were properly charged and that requests for additional funding were substantiated. Under the AHIP program, Bell refitted older helicopters with up-to-date guidance and weapons systems for the U.S. Army. The Army ordered the refitting of the helicopters in groups called "contract lots," which were consecutively numbered.

Robertson reported to Alvin Leavell, who was his immediate supervisor. William Wilson was in charge of Department M-1, and Robert Holton was second in charge. Wilson and Holton reported to Daniel McCrary, who was responsible for contract administration on all helicopter programs with the United States Government.

In November 1990, Leavell asked Robertson to request an additional $1.6 million for Contract

Lots IV and V for unanticipated maintenance and repair. No explanation was given as to why the additional funds were due. Nevertheless, Robertson wrote a letter to the government requesting the additional $1.6 million. Robertson, however, told the government contracting officer not to process the request because it had not been verified. Leavell then informed Wilson that neither he nor Robertson would request additional funds for unanticipated maintenance and repair until the increased costs were substantiated.

During this time, Robertson voiced his concerns to several of his superiors about the lack of verification for these additional charges. Robertson also sought to substantiate the charges by requesting information from managers of different departments. Robertson testified at trial that he raised the cost-charging issue with his supervisors on an almost monthly basis. Robertson's immediate supervisor, Leavell, testified that he was aware that Robertson was concerned about the additional charges.

In 1991, Wilson asked Leavell to write a letter requesting an additional $2 million for unanticipated maintenance and repair for Contract Lots VI and VII. Leavell declined to make the request without proper justification. In October 1991, Leavell was transferred to another department, and Robertson was placed under the supervision of John Growe. In December 1991, Growe asked Robertson to write the letters requesting the additional $2 million for Lots VI and VII, and Robertson refused.

In November 1991, Leavell recommended that Robertson receive a 3+ rating on his performance evaluation for 1991. Wilson, however, assigned Robertson a 3 rating. Wilson testified that he lowered the rating because Robertson was occasionally tardy and had difficulty communicating effectively.

In February 1992, as part of a general reduction in Bell's workforce, Robertson was laid off. Bell maintains that Robertson was chosen because he had the lowest performance rating. On the day after being notified of his layoff, Robertson complained to the Director of Bell's Ethics Office that he was being laid off because of his age. He also suggested that Bell might be engaged in improper charging, but stated that he did not have any evidence of fraud.

On July 14, 1992, Robertson filed suit against Bell, asserting claims for (1) age discrimination, (2) retaliation for reporting false claims in furtherance of a qui tam action under 31 U.S.C. § 3730(h), (3) wrongful discharge for refusing to perform an illegal act, and (4) estoppel. Robertson eventually dropped his age discrimination claim, and the district court granted Bell's motion for summary judgment on the estoppel claim. The case proceeded to trial on the federal retaliation and state wrongful discharge claims. After Robertson rested, Bell moved for judgment as a matter of law, which the district court denied. Bell renewed its motion after the close of all the evidence, but it was again denied.

The jury was properly instructed that in order to find for Robertson on his federal retaliation claim, they had to find that Bell knew Robertson was investigating alleged fraud in an effort to bring, or to help the government to bring, a False Claims Act suit. The jury found that Bell knew of Robertson's investigation in furtherance of a *qui tam* action.[1] The jury also found that Bell had not given a reasonable, non-retaliatory explanation for discharging Robertson. Under the instructions given by the district court, because the jury found for Robertson on his retaliation claim, it did not answer the interrogatories regarding his state law wrongful discharge claim.

After the jury returned its verdict, the district court granted Bell's motion for judgment as a matter of law. The court determined that there was insufficient evidence to support the jury's findings that Bell knew of Robertson's alleged investigations in furtherance of a *qui tam* action or that Bell discharged Robertson because of such investigations. The court also found that there was insufficient evidence to support the jury's finding that Bell's non-retaliatory explanation was pretextual. Finally, the district court concluded that, as a matter of law, Robertson was not entitled to a jury determination on his wrongful discharge claim.

## II.

## A.

In reviewing the district court's decision to grant a judgment as a matter of law, we use the

---

[1]Robertson did not file a qui tam action until March 9, 1993. The United States elected not to intervene, and Robertson filed a notice of voluntary dismissal.

same standard of review that guided the district court. *Crosthwait Equip. Co. v. John Deere Co.,* 992 F.2d 525, 528 (5th Cir.), *cert. denied,* --- U.S. ----, 114 S.Ct. 549, 126 L.Ed.2d 451 (1993). We consider all the evidence with all reasonable inferences in the light most favorable to the party opposed to the motion. *Id.* If the facts and the inferences point so strongly and overwhelmingly in favor of Bell that reasonable jurors could not arrive at a contrary verdict, then the motion was properly granted. *Id.* If there is substantial evidence—that is, evidence of such quality and weight that reasonable and fair-minded jurors might reach a different conclusion—then the motion should have been denied. *Id.*

The "whistleblower" provision of the False Claims Act prevents the harassment, retaliation, or threatening of employees who assist in or bring *qui tam* actions. In particular, the statute provides:

> Any employee who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment by his or her employer because of lawful acts done by the employee on behalf of the employee or others in furtherance of an action under this section, including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section, shall be entitled to all relief necessary to make the employee whole....

31 U.S.C. § 3730(h). The legislative history makes clear that a "whistleblower must show the employer had knowledge the employee engaged in "protected activity.' " S.Rep. No. 345, 99th Cong., 2d Sess. 35 (1986), reprinted in, 1986 U.S.C.C.A.N. 5266, 5300.

This case turns on whether the record supports an inference that (1) Robertson engaged in protected activity, and (2) that Bell knew about it. Robertson argues that his actions constituted protected activity in two respects. First, he argues that internal reporting of false claims is protected under the False Claims Act so that expression of his concerns to his superiors constituted protected activity. Second, Robertson argues that his investigation of the increased costs constitutes protected activity.

With regard to Robertson's reporting of his concerns to his superiors, several district courts have held that § 3730(h) protects internal whistleblowers. *See, e.g., Clemes v. Del Norte County Unified Sch. Dist.,* 843 F.Supp. 583, 595-96 (N.D.Cal.1994); *United States ex rel. Kent v. Aiello,* 836 F.Supp. 720, 723-24 (E.D.Cal.1993); *Neal v. Honeywell, Inc.,* 826 F.Supp. 266, 269-73 (N.D.Ill.1993). In each of those cases, however, the employee told the employer that she was

concerned about the company defrauding the government. For instance, in *Neal,* the court explained that the actual filing of a qui tam suit should not be a prerequisite to protection under § 3730(h):

> It would make little sense to protect an anonymous *qui tam* plaintiff who filed an expensive and time-consuming lawsuit while ignoring someone like the Plaintiff, whose bold conduct led to a quick, voluntary and efficient disclosure of the fraud and reparation to the government. Thus, we hold that the whistleblower protection provision of the False Claims Act forbids discrimination against an employee who has made an intracorporate complaint about fraud against the government.

826 F.Supp. at 273.

The purpose of the False Claims Act, of course, is to discourage fraud against the government, and the whistleblower provision is intended to encourage those with knowledge of fraud to come forward. *See id.* at 269. In the cases cited above, the employees did not file *qui tam* actions, but they did express concerns about possible fraud to their employers. By contrast, in this case, Robertson admitted that he never used the terms "illegal," "unlawful," or "*qui tam* action" in characterizing his concerns about Bell's charges.[2] Thus, Robertson's reporting was qualitatively different than the reporting that occurred in the cases he cites. As a result, we conclude that Robertson's reporting did not constitute protected activity under the False Claims Act.

Robertson's second argument is that his investigation into the possible overcharging constituted protected activity. Bell maintains, however, that Robertson's investigations were part of his job, and that it did not know of any qui tam investigation because Robertson kept the possibility of filing a suit to himself. In response, Robertson argues that although verifying charges was part of his job, investigating them was not.

---

[2]On cross-examination, Robertson testified as follows:

> Q. Did you ever use the word "illegal" with anyone prior to the time that you were terminated?
>
> A. Not the term "illegal," no.
>
> Q. What about unlawful?
>
> A. I don't—I may not have even used that term.
>
> Q. What about the term "qui tam action," did you mention that to anybody?
>
> A. No, I didn't.

After reviewing the record, we agree with the district court that Robertson "did nothing to rebut his supervisors' testimony regarding their lack of knowledge that he was conducting investigations outside the scope of his job responsibilities in furtherance of a *qui tam* action." All of Robertson's supervisors testified that they had no knowledge of any activity by Robertson in furtherance of a *qui tam* investigation. Moreover, Robertson conceded that he kept his *qui tam* intentions to himself.[3] Robertson never characterized his concerns as involving illegal, unlawful, or false-claims investigations. Thus, the record contains no evidence that Robertson expressed any concerns to his superiors other than those typically raised as part of a contract administrator's job. Consequently, the only way Bell could have known that Robertson's activities were in furtherance of an action under the False Claims Act would have been from his conduct. However, based on his own testimony at trial, it is clear that Robertson's actions were consistent with the performance of his duty, as a contract administrator, to substantiate requests for additional funding.

At the time Robertson began to request information in 1990, he believed that his actions were in the normal course of his duties. Only sometime in 1991 does he contend he began to consider the possibility of filing a *qui tam* suit. However, Robertson's conduct was the same as before he formed his *qui tam* intent—asking others to obtain certain information for him:

Q. Did you think that those follow-up efforts to obtain the information were within the scope of your job responsibilities?

A. Initially, but then—it was apparent to me that nobody was going to provide the information.

Q. And when did that become apparent to you?

A. In early '91.

---

[3]Robertson testified as follows:

Q. So by June of 1991 you were taking steps in furtherance of an investigation of a qui tam action?

A. Yes.

Q. Did you bring that to anybody's attention, or was that simply your own private thought?

A. Well, it was my own private thought....

Q. And then what did you—did you take any steps to actually obtain the information?

A. Other than to continue to ask them, because I had no access to that information....

Thus, Robertson has identified no change in his conduct that might have objectively demonstrated his *qui tam* intentions.

We therefore conclude that Robertson failed to present sufficient evidence to support a finding that Bell was aware that his investigations were in furtherance of a *qui tam* action. Without such knowledge, Bell could not possess the retaliatory intent necessary to establish a violation of the whistleblower provision of the False Claims Act. The district court therefore properly granted Bell's motion for judgment as a matter of law on Robertson's retaliation claim.

B.

As an alternative theory of recovery, Robertson asserted a common law claim for wrongful discharge. The jury, however, never addressed this claim because under the district court's instructions, if the jury awarded Robertson recovery on his retaliation claim, it was precluded from reaching his wrongful discharge claim. After granting judgment as a matter of law on the retaliation claim, the district court determined that Robertson was not entitled to a jury determination of his wrongful discharge claim; the court concluded that Robertson's position with respect to his retaliation claim was inconsistent with his wrongful discharge claim. As a result, the district court dismissed the wrongful discharge claim.

In *Sabine Pilot Service, Inc. v. Hauck,* 687 S.W.2d 733 (Tex.1985), the Texas Supreme Court recognized an exception to the employment-at-will doctrine, which protects an employee who is discharged for the sole reason that the employee refused to perform an illegal act. In *Pease v. Pakhoed Corp.,* 980 F.2d 995, 997 n. 1 (5th Cir.1993), we made clear that "an employee who alleges wrongful discharge for refusing to perform a criminal act cannot advance additional claims." Thus, to warrant recovery under this narrow common law cause of action, the refusal to perform an illegal act must be the sole reason advanced for the plaintiff's discharge. Robertson's assertion that he was fired for another reason—in retaliation for investigating a *qui tam* action—precludes his common law claim. The district court therefore properly dismissed Robertson's wrongful discharge claim.

## III.

For the above reasons, we affirm the judgment of the district court.

AFFIRMED.