# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 03-3710

_____

| | | |
|---|---|---|
| Cynthia A. Schuhardt;<br>Nancy M. Becker, | * <br> * <br> * | |
| Plaintiffs - Appellants, | * <br> * | |
| United States of America, | * <br> * | |
| Movant Below, | * <br> * <br> * | |
| v. | * <br> * | Appeal from the United States |
| Washington University, | * <br> * <br> * | District Court for the<br>Eastern District of Missouri. |
| Defendant - Appellee,<br>_____ | * <br> * <br> * | |
| Taxpayers Against Fraud, The False<br>Claims Act Legal Center; National<br>Employment Lawyers Association, | * <br> * <br> * <br> * | |
| Amici on Behalf of<br>Appellant, | * <br> * <br> * | |
| American Association of Medical<br>Colleges, | * <br> * <br> * | |
| Amicus on Behalf of<br>Appellee. | * <br> * | |

_____

Submitted: September 13, 2004
Filed: December 3, 2004

_____

Before RILEY, LAY, and SMITH, Circuit Judges.
_____

SMITH, Circuit Judge.

Cynthia A. Schuhardt and Nancy M. Becker ("Appellants") brought a *qui tam* action as relators for the government against Washington University ("the University") alleging violations of the False Claims Act (FCA), 31 U.S.C. §§ 3729 *et seq*. Schuhardt, individually, also made a claim for retaliation under 31 U.S.C. § 3730(h). The University moved for summary judgment on all claims and the district court granted the University's motion. We affirm in part and reverse in part.

## I. *Background*

Washington University's Department of Surgery employed Appellants as "coders." As coders, Appellants performed an accounting task. Specifically, coders reviewed patient files and determined the appropriate billing structure. Many of the bills prepared by Appellants were submitted for payment to various federal entities including Medicare and Medicaid. In late 1996 and early 1997, the University's Department of Surgery conducted a large scale review of patient files. As part of that review, Appellants checked patient files to ensure proper documentation for billing purposes. If the file data was incomplete, Appellants contacted the patient's attending physician and obtained the documentation needed to prepare a bill for the medical services provided.

According to Appellants, as they reviewed patient files they became concerned that the University's billing practices could include fraud. Specifically, Appellants believed that the University's doctors did not properly document their involvement with patients. Central to Appellants' concern was that the University was billing federally funded programs for surgical procedures and other medical services as if they were performed by teaching physicians when the procedures and services were

-2-

actually performed by residents, fellows and nurses in the absence of a teaching physician.

Schuhardt complained to her supervisor about the billing methods. According to Schuhardt, the University's billing practice remained unchanged. She told her advisors that she thought it was "illegal" and "fraudulent" to bill Medicare for undocumented surgeries, and that "if the OIG [Office of Inspector General] would come in they would frown upon us and they'd pretty much wipe us out." Schuhardt alleged that she was humiliated, criticized, demoted, harassed, and eventually discharged because of her complaints.

After Schuhardt's termination, Appellants submitted their allegations to the United States Government pursuant to the *qui tam* provisions of the FCA. The government declined to intervene in the matter, explaining that it was unable to verify any specific allegations of fraud. Appellants pursued the case as relators in the name of the United States and filed the instant action in the United States District Court for the Eastern District of Missouri.

In response, the University filed a motion to dismiss contending that Appellants failed to plead fraud with sufficient particularity. The district court agreed with the University and ruled that the complaint failed to satisfy the particularity requirements of Fed. R. Civ. P. 9(b). However, rather than dismiss Appellants' suit, the district court granted Appellants leave to file an amended complaint. Appellants filed an amended complaint making specific allegations of fraud in connection with fifteen separate patients. The University repeated its motion to dismiss for failure to plead fraud with particularity. The district court denied the motion.

Appellants conducted lengthy discovery related to their fifteen distinct allegations of fraud. Following discovery, the University sought summary judgment on two grounds. First, the University argued that appellants failed to provide sufficient supportive evidence of fraud. Second, the University moved for summary

judgment on Schuhardt's claim for retaliation contending that she did not engage in protected activity within the meaning of 31 U.S.C. § 3730(h). Appellants requested the district court to grant additional discovery under Fed. R. Civ. P. 56(f) prior to ruling on Washington University's motion for summary judgment. The district court denied Appellants' motion to continue discovery, and granted the University's motion for summary judgment. The Appellants' combined complaint and Schuhardt's claim for retaliation were dismissed.

## II. *Discussion*
### A. *FCA Claim*

On appeal, Appellants make four arguments for reversal of the district court's summary judgment in favor of the University on their *qui tam* action. They argue: (1) that there was sufficient evidence of fraud to survive summary judgment; (2) that the district court erred by failing to give original medical records proper evidentiary weight; (3) that the district court erred in deciding issues of credibility; and (4) that the district court abused its discretion in denying further discovery.

In a sixty-page memorandum and order, the district court comprehensively detailed the evidence submitted by Appellants. After careful examination of the record and briefs in this case, we conclude that the district court committed no error of law or fact as to Appellants' FCA claim. Accordingly, we affirm the dismissal of Appellants' *qui tam* action, adopting the reasoning of the district court's thorough memorandum and order. *See Schuhardt v. Washington University*, No. 4:99-CV-1202 CEJ (Sep. 29, 2003).

### B. *Retaliation*

The district court also granted summary judgment to the University on Schuhardt's retaliation claim. We review grants of summary judgment *de novo. Murphey v. City of Minneapolis,* 358 F.3d 1074, 1077 (8th Cir. 2004), and will affirm the judgment if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). Furthermore, we

view all evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences. *Hammond v. Northland Counseling Ctr., Inc.*, 218 F.3d 886 (8th Cir. 2000). The moving party is entitled to summary judgment if "the nonmoving party has failed to make a sufficient showing on an essential element of her [or his] case with respect to which she [or he] has the burden of proof." *Id.* at 890 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

The FCA whistleblower statute protects employees who are "discharged . . . because of lawful acts done by the employee . . . in furtherance of [a civil action for false claims]." 31 U.S.C. § 3730(h); *Wilkins v. St. Louis Hous. Auth.*, 314 F.3d 927, 932–33 (8th Cir. 2002). In order to prove retaliation under this section, a plaintiff must prove that (1) the plaintiff was engaged in conduct protected by the FCA; (2) the plaintiff's employer knew that the plaintiff engaged in the protected activity; (3) the employer retaliated against the plaintiff; and (4) the retaliation was motivated solely by the plaintiff's protected activity. *Id.* The district court determined that Schuhardt failed to establish the first two elements of her retaliation claim and dismissed the complaint. According to the district court, Schuhardt was not engaged in protected activity, and, even if she was, Washington University did not know she was engaged in the activity. We disagree and hold that Schuhardt presented sufficient evidence to show that she engaged in protected activity and that the University knew of such activity.

### 1. *Protected Activity*

Protected activity is established when the employee's actions satisfy two conditions. First, the employee's conduct must have been in furtherance of an FCA action. *See United States ex rel. Hopper v. Anton*, 91 F.3d 1261, 1269 (9th Cir. 1996) (quoting 31 U.S.C. § 3730(h)).[1] Second, the employee's conduct must be aimed at

---

[1]In *Wilkins v. St. Louis Housing Authority,* 314 F.3d 927, 933 (8th Cir. 2002), we dismissed an argument that activity was not protected because it was not done in

matters which are calculated, or reasonably could lead, to a viable FCA action. *Id.* This second condition has been clarified as follows:

> An employee engages in protected activity where (1) the employee in good faith believes, and (2) a reasonable employee in the same or similar circumstances might believe, that the employer is possibly committing fraud against the government.

*Wilkins*, 314 F.3d at 933 (quoting *Moore v. Cal. Inst. Tech Jet Propulsion Lab*, 275 F.3d 838, 845 (9th Cir. 2002)). The protected activity element of a retaliation claim does not require the plaintiff to have filed an FCA lawsuit or to have developed a winning claim at the time of the alleged retaliation. *United States ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 236 (1st Cir. 2004). Indeed, § 3730(h) protects internal whistleblowers who make a complaint about fraud against the government. *See Robertson v. Bell Helicopter Textron, Inc.*, 32 F.3d 948, 951 (5th Cir. 1994).

According to Schuhardt, she complained to her supervisor that the University's billing practice was illegal and fraudulent. To support that complaint, she copied patient records to expose the potential fraud. After reviewing Schuhardt's deposition testimony, the district court ruled that Schuhardt did no more than her regular job duties. Consequently, she was not acting in furtherance of a *qui tam* action. However, the district court ignored the fact that Schuhardt copied files and took them home to substantiate the existence of fraud. This activity was not within her job duties. Schuhardt's position required her to check the completeness of documentation to the

---

furtherance of a *qui tam* action stating, "this argument misses the distinction between the standards for a successful *qui tam* suit and those for an anti-retaliation claim." There, however, we were focusing on the second prong established by the Ninth Circuit in *Moore v. Cal. Inst. of Tech. Jet Propulsion Lab.*, 275 F.3d 838 (9th Cir. 2002), and did not supplant the requirement that an employee's conduct be in furtherance of an FCA action to be protected activity.

medical chart and try to obtain any missing documentation needed for billing the responsible party. Schuhardt's job duties did not include checking billings for compliance with federal regulatory requirements.

Viewing the evidence in the light most favorable to Schuhardt, and drawing all inferences in her favor, we conclude that there is sufficient evidence that Schuhardt's activity was in furtherance of a *qui tam* action. Specifically, Schuhardt perceived a mass effort to modify patient records months after a procedure had occurred. She explained that doctors signed reports without reviewing files. She advised her supervisor that the activity may be fraudulent and illegal. She also mentioned to the supervisor that a government agency would forbid the practice if it was aware of it. Schuhardt complained to the University over its confidential hotline. Then, when the billing practice remained unchanged, she copied files that she believed to be evidence of fraud.

### 2. *Knowledge*

Schuhardt's activity notwithstanding, if the University did not know that she engaged in protected activity, her claim for retaliation would nonetheless fail. *Wilkins*, 314 F.3d 927. "The legislative history [of § 3730(h)] makes clear that a whistle blower must show the employer had knowledge the employee engaged in 'protected activity.'" *Robertson*, 32 F.3d at 951 (quoting S.Rep. No. 345, 99th Cong., 2d Sess. 35 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5266, 5300). A plaintiff must show the employer had actual or constructive knowledge of the protected activity in order to establish a prima facie case of retaliation. *Buettner v. Arch Coal Sales Co., Inc.*, 216 F.3d 707, 715 (8th Cir. 2000). Put simply, an employee has the burden of presenting enough evidence to demonstrate that the defendant was on notice that "plaintiff was either taking action in furtherance of a private *qui tam* action or assisting in an FCA action brought by the government." *United States ex rel.*

*Ramseyer v. Century Healthcare Corp.*, 90 F.3d 1514, 1522 (10th Cir. 1996) (citing *Robertson v. Bell Helicopter Textron, Inc.*, 32 F.3d 948, 951 (5th Cir. 1994)).[2]

Schuhardt's statements to her supervisors that the University's billing practice was fraudulent and illegal are sufficient to overcome a motion for summary judgment based on lack of notice. The Fifth Circuit has indicated that an employee's report of illegal or unlawful activity is sufficient to put an employer on notice that the employee is engaged in protected activity. *Robertson, Inc.*, 32 F.3d at 951. Similarly, the First Circuit held that an employee provided sufficient notice of protected conduct under the FCA where he notified his employer of its fraudulent Medicare and Medicaid bills. *Karvelas*, 360 F.3d 220. For purposes of an FCA retaliation claim, the employee alleged facts sufficient to support an inference that the employers were on notice. *Id*. Likewise, the Ninth Circuit concluded that there was a question of fact about knowledge when an employee made internal complaints. *Moore v. California Inst. of Tech. Jet Propulsion Lab.*, 275 F.3d 838 (9th Cir. 2002).

----

[2]Part of Schuhardt's job as a coder involved checking the completeness of documentation for billing purposes and obtaining additional documentation as necessary. The district court concluded that Schuhardt's activity was part and parcel of her employment obligations. An employee tasked with the internal investigation of fraud against the government cannot bring a § 3730(h) action for retaliation unless the employee makes it clear that her actions go beyond the assigned task. *See Eberhardt v. Integrated Design & Constr., Inc.*, 167 F.3d 861, 868 (4th Cir. 1999); *United States ex rel. Ramseyer v. Century Healthcare Corp.*, 90 F.3d 1514, 1523 (10th Cir. 1996); *Robertson v. Bell Helicopter Textron, Inc.*, 32 F.3d 948, 951 (5th Cir. 1994). In this case, Schuhardt's job did not entail investigating fraud. Instead, her job was to find portions of patient records that were missing signatures from attending physicians and get them properly signed. Schuhardt's job duties did not involve investigating government payments or billings, and, thus, she need not meet the heightened requirements for employees whose job descriptions include such responsibilities in order to establish a § 3730(h) retaliation claim. *See United States ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 239 (1st Cir. 2004).

The record reveals that Schuhardt told her supervisors that the University's billing practice was "illegal" and "fraudulent" and that "if the OIG would come in they would frown upon us and they'd pretty much wipe us out." These facts provide sufficient notice to the University that Schuhardt was engaged in protected activity. As such, we reverse the order of summary judgment on Schuhardt's claim for retaliation.

## III. *Conclusion*

In sum, we affirm the dismissal of the Appellants' *qui tam* action and reverse the order of summary judgment with respect to Schuhardt's retaliation claim.

Affirmed in part, reversed in part.

_____