# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 17, 2011

No. 10-30376

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA, ex rel, JOHN PATTON

Plaintiff–Appellant

v.

SHAW SERVICES, L.L.C.,

Defendant–Appellee

---

Appeal from the United States District Court
for the Eastern District of Louisiana
No. 2:08-CV-4325

---

Before KING, DAVIS, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

John Patton brought a *qui tam* action against Shaw Services, L.L.C., alleging that the company submitted false or fraudulent claims to the federal government for payment in violation of the False Claims Act, and terminated his employment in retaliation for his complaints about the company's allegedly fraudulent practices. The district court granted summary judgment in favor of the employer on all of Patton's claims. We affirm the judgment of the district court.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-30376

## I.  FACTS AND PROCEDURAL BACKGROUND

From May 27, 2008 through July 23, 2008, Shaw Services, L.L.C. ("Shaw") employed John Patton as a carpenter on a project at the Louisiana State Transportation Center.  This project was funded in part by the federal government.  Patton brought suit against Shaw under the False Claims Act ("FCA"), 31 U.S.C. §§ 3729–3733 (2006).[1]  Patton alleged in Count 1 of his Complaint that Shaw received payment for allegedly substandard construction work by presenting false or fraudulent claims to the government or by making false records or statements (the "§ 3729(a) claims").  In Count 2 of his Complaint, Patton alleged that Shaw violated the FCA's whistleblower provision by creating a hostile work environment that culminated in his discharge because of his complaints to Shaw and to state and federal agencies about Shaw's construction methods and false claims (the "retaliation claim").

In lieu of an answer, Shaw filed two dispositive motions.  First, Shaw moved to dismiss, or in the alternative, for partial summary judgment on Patton's retaliation claim on the basis that Patton failed to establish that his supervisors were aware of, and terminated his employment because of, his complaints about Shaw's allegedly fraudulent practices.  Shaw also moved to dismiss the § 3729(a) claims for failure to plead fraud with particularity under Federal Rule of Civil Procedure 9(b).

Because the parties presented materials outside the pleadings in connection with both motions, the district court treated the motions as motions for summary judgment under Federal Rule of Civil Procedure 56, in accordance with Rule 12(d).  *See* FED. R. CIV. P. 12(d) ("If, on a motion under Rule 12(b)(6)

---

[1] The Government declined to intervene in the action.

No. 10-30376

. . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."). Because Shaw's motion on the § 3729(a) claims had been presented solely as a motion to dismiss under Rule 12(b)(6), the district court granted the parties fourteen days to submit supplemental material pertinent to that motion.  After both parties submitted additional materials, the district court considered Shaw's motions together and  granted summary judgment for Shaw on all of Patton's claims.  Patton appeals.

## II.  DISCUSSION

We review summary judgment orders *de novo*, applying the same standards as the district court. *United States ex rel. Longhi v. United States*, 575 F.3d 458, 465 (5th Cir. 2009).  Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  "Once the moving party has initially shown that there is an absence of evidence to support the non-moving party's cause, the non-movant must come forward with specific facts showing a genuine factual issue for trial." *United States ex rel. Farmer v. City of Houston*, 523 F.3d 333, 337 (5th Cir. 2008) (citation and internal quotation marks omitted).  "This Court resolves any doubts and draws all reasonable inferences in favor of the nonmoving party." *Longhi*, 575 F.3d at 465.

### A.    Claims under 31 U.S.C. § 3729(a)

"The FCA is the Government's primary litigation tool for recovering losses resulting from fraud." *United States ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 267 (5th Cir. 2010) (citation and internal quotation marks omitted). The language of Patton's Complaint tracks the language of 31 U.S.C.

3

No. 10-30376

§§ 3729(a)(1) and (2), as in effect when Patton filed his claim on September 8, 2008. An individual violates the FCA under these sections when he "knowingly presents . . . a false or fraudulent claim for payment," § 3729(a)(1), or "knowingly makes . . . a false record or statement to get a false or fraudulent claim paid or approved by the Government," § 3729(a)(2).[2]

The FCA is a fraud prevention statute, and "not a general enforcement device for federal statutes, regulations and contracts." *Steury*, 625 F.3d at 268 (internal quotation marks omitted). The FCA does not create liability for a contractor's breach of a contractual provision or regulation "unless, as a result of such acts, the [contractor] knowingly asks the Government to pay amounts it does not owe." *United States ex rel. Willard v. Humana Health Plan or Texas Inc.*, 336 F.3d 375, 381 (5th Cir. 2003). Accordingly, to prove a violation of the FCA, a plaintiff must establish "(1) . . . a false statement or fraudulent course of conduct; (2) made or carried out with the requisite scienter; (3) that was material; and (4) that caused the government to pay out money or to forfeit moneys due (i.e., that involved a claim)." *Longhi*, 575 F.3d at 467 (internal

---

[2] The 2009 amendments to the FCA replaced former sections § 3729(a)(1) and (2) with new sections § 3729(a)(1)(A) and (B). Although the 2009 amendments generally apply only to conduct occurring on or after May 20, 2009, new provision § 3729(a)(1)(B), which replaced and amended § 3729(a)(2), applies retroactively to "all claims under the False Claims Act . . . that are pending on or after" June 7, 2008. *See* Fraud Enforcement & Recovery Act of 2009, Pub.L. 111-21, § 4(f)(1), 123 Stat. 1617, 1625 (2009). Because Patton filed suit on September 8, 2008, his complaint was "pending" after the effective date of new provision § 3729(a)(1)(B). *See Steury*, 625 F.3d at 267 n.1 (applying § 3729(a)(1)(B) to a complaint pending as of the effective date of the amendment).

The amended provision imposes liability on any person who "knowingly makes . . . a false record or statement material to a false or fraudulent claim." § 3729(a)(1)(B). Any substantive difference between the prior and amended provision is irrelevant here because, as discussed below, Patton has not adduced *any* evidence of a false record or statement so as to create a genuine dispute about Shaw's liability under either version of the statute.

No. 10-30376

quotation marks omitted) (adopting the test stated in *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008)).  "[T]he statute attaches liability, not to the underlying fraudulent activity . . . but to the 'claim for payment.'" *Id.* (internal quotation marks omitted) (quoting *Harrison v. Westinghouse Savannah River* Co., 176 F.3d 776, 785 (4th Cir. 1999)).

Patton alleged in his Complaint that Shaw committed fraud "at or in connection with construction to less than contract specifications and/or applicable building codes at the Louisiana State Transportation Center." Patton identified "fraudulent" construction mistakes concerning the rebar and concrete work on the project,[3] which allegedly rendered Shaw's claims for payment false or fraudulent within the meaning of the FCA.  To create a genuine issue of fact for trial, Patton submitted excerpts from various industry treatises, textbooks, and manufacturers' catalogs, averring that Shaw's construction methods deviated from the standards set forth in these materials. Patton supported his contentions with an affidavit from Ladd Ehlinger, a practicing architect and expert witness, who testified generally about the harms resulting from the construction defects that Patton alleged in his Complaint.  He also produced a declaration in which he alleges that his Shaw supervisors admitted on various unspecified occasions to the construction mistakes alleged in his Complaint.

The district court found that Patton failed to show how Shaw violated any provision of its contract or any applicable building code by employing the

---

[3] The alleged construction mistakes in Patton's Complaint include Shaw's failure to use rebar "chairs," improper removal of rebar, inadequate doweling for intersecting walls, improper application of a "form release agent" to the rebar, and improper splicing of horizontal rebar, all of which allegedly affected the integrity or load-bearing strength of the structure and created potentially serious safety risks.

No. 10-30376

construction methods outlined in Patton's Complaint and described in his briefing. The district court rejected Patton's argument that Shaw's construction work was "defective" and improper because it was not performed in accordance with the standards set forth in the authorities Patton produced to the court. The district court found that none of the materials Patton submitted were referenced in or incorporated into Shaw's contract, and therefore, any failure to conform to the standards set forth in those materials was irrelevant to determining whether Shaw violated its obligations under the contract. Furthermore, the district court noted that Shaw produced evidence that a third-party architectural firm retained by the state inspected Shaw's work weekly and drafted field reports, none of which indicated that Shaw's work was not in compliance with the contract or otherwise improper in the ways Patton contends. Because Patton failed to demonstrate that the allegedly defective work violated the contract, the district court found Patton's § 3729(a) claims to be without merit.

Patton concedes on appeal that he cannot show that the standards set forth in the materials he submitted to the district court are incorporated into the contract. He urges, however, that he should be accorded the "reasonable inference" that they are incorporated because the construction methods set forth in those materials represent standard industry practice, and that we should likewise infer that any violation of standard industry practice, as set forth in these materials, represents a violation of the contract.[4] Patton also contends

---

[4] We do not address Patton's argument, raised for the first time on appeal, that the construction standards that he alleged Shaw violated fall within the "good faith" requirement that Louisiana law imposes on all contracts. *See Yohey v. Collins*, 985 F.2d 222, 225 (5th Cir. 1993) ("As a general rule, this Court does not review issues raised for the first time on appeal.").

No. 10-30376

that his summary judgment evidence sufficed to raise a triable issue of fact as to whether Shaw complied with particular provisions of the contract. We need not delve into the disputed provisions of the contract, however, because even if Patton created a genuine dispute as to whether Shaw complied with the contract specifications in all particulars, Patton has nonetheless failed to put forth any evidence to support the other elements of his claims so as to establish that Shaw's conduct constituted a violation of the FCA.

Patton has produced no evidence regarding the presentment of any claim to the government that was false or fraudulent within the meaning of the FCA. There is no indication, for instance, that Shaw falsely certified compliance with the contract provisions or construction methods that Patton alleges Shaw violated; nor has he shown that compliance with those provisions or methods was a condition to payment under the contract. *See Steury*, 625 F.3d at 268 (upholding dismissal of FCA claims premised on a contractor's billing for work that did not comply with federal statutes, regulations, or contract provisions when a contractor's compliance "was not a 'condition' or 'prerequisite' to payment under a contract"); *cf. United States v. Southland Mgmt. Corp.*, 326 F.3d 669, 674–75 (5th Cir. 2003) (en banc) ("It is only those claims for money or property to which a defendant is not entitled that are 'false' for purposes of the False Claims Act."). Moreover, Patton admitted to the district court that he could not point to a any false record or certification that the construction work was done correctly, but speculated that Shaw must have falsified records because he never saw an inspector at the job site. However, "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing

7

No. 10-30376

a genuine issue for trial." *Farmer*, 523 F.3d at 337 (citation and internal quotation marks omitted).

Furthermore, Patton has not put forth evidence creating a genuine dispute as to whether Shaw acted with the requisite scienter. For FCA liability to attach, not only must the defendant submit false claims, but the defendant must have "*knowingly* or *recklessly* cheated the government." *United States ex rel. Taylor–Vick v. Smith*, 513 F.3d 228, 232 (5th Cir. 2008) (emphasis added); *see also* 31 U.S.C. §§ 3729(b)(1)(A)(i)—(iii); *Southland Mgmt. Corp.*, 326 F.3d at 682 (Jones, J., specially concurring) (mere violations of regulations and contractual provisions "are not fraud unless the violator knowingly lies to the government about them" (quoting *United States ex rel. Lamers v. City of Green Bay*, 168 F.3d 1013, 1019 (7th Cir. 1999)). At best, Patton has put forth unsubstantiated allegations that his supervisors admitted to employing substandard or improper construction practices, but these allegations are insufficient to create a genuine dispute as to whether Shaw knowingly or recklessly submitted false claims to the government. *See Farmer*, 523 F.3d at 337.

Because Patton has not adduced evidence to create a genuine dispute as to the essential elements of his claims, the district court did not err in granting summary judgment in favor of Shaw. *See Farmer*, 523 F.3d at 337 ("'[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial' and 'mandates the entry of summary judgment' for the moving party.") (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986)).

**B.    Retaliation under 31 U.S.C. § 3730(h)**

The whistleblower provision of the False Claims Act, 31 U.S.C. § 3730(h), encourages employees with knowledge of fraud to come forward by prohibiting retaliation against employees who assist in or bring *qui tam* actions against their employers. *Robertson v. Bell Helicopter Textron, Inc.*, 32 F.3d 948, 951 (5th Cir. 1994). Section 3730(h), as applicable to Patton's suit, protects "lawful acts done by [an] employee . . . in furtherance of an action under this section, including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section."[5] § 3730(h). To bring an FCA retaliation claim for his termination, Patton was required to show that he engaged in activity protected under the statute, that his employer knew he engaged in protected activity, and that he was discharged because of it. *Id.*; *Robertson*, 32 F.3d at 951.

Patton declared that he "complained repeatedly" to on-site Shaw supervisors and to off-site management about "fraudulent construction mistakes," the same allegedly improper construction methods that Patton alleges gave rise to his § 3729(a) claims. Patton contends that his complaints constituted protected activity within the meaning of the anti-retaliation provision of the FCA. Patton also alleged that he complained to state and federal authorities about Shaw's work prior to his termination.

---

[5] Congress amended this section in 2009 to provide relief to any employee discharged for acting "in furtherance of other efforts to stop 1 or more violations of this subchapter." Pub.L. No. 111-21, § 4(d), 123 Stat. 1617, 1624-25 (2009). The amendment only applies to conduct on or after May 20, 2009. *See id.* § 4(f), 123 Stat. at 1625. Shaw fired Patton in July 2008, so these changes do not apply here.

No. 10-30376

We agree with the district court that Patton failed to put forth sufficient evidence to overcome summary judgment on his retaliation claim. Patton's allegations that Shaw supervisors retaliated against him for internally reporting "fraudulent" construction practices or "false claims construction mistakes" are conclusory and unsupported by specific facts creating a genuine issue for trial. *Clark v. America's Favorite Chicken Co.*, 110 F.3d 295, 297 (5th Cir. 1997) (citations omitted) ("Unsupported allegations or affidavit or deposition testimony setting forth ultimate or conclusory facts and conclusions of law are insufficient to defeat a motion for summary judgment."); *see also United States v. Lawrence*, 276 F.3d 193, 197 (5th Cir. 2001) ("[S]elf-serving allegations are not the type of significant probative evidence required to defeat summary judgment.") (citation and internal quotation marks omitted). Additionally, assuming that he contacted state and federal authorities prior to his termination, Patton has put forth no evidence to support the allegation in his Complaint that "his complaints to the governmental entities were known to defendant."

Moreover, although Patton alleges that he internally reported "fraud," it is clear that the substance of his complaints concerned Shaw's allegedly unsafe or improper construction methods, and not that Patton was concerned that Shaw was defrauding the government. For internal complaints to constitute protected activity "in furtherance of" a *qui tam* action, the complaints must concern false or fraudulent claims for payment submitted to the government. *See Robertson*, 32 F.3d at 952 (finding no protected activity where employee "never characterized his concerns as involving illegal, unlawful, or false-claims investigations"). Mere criticism of Shaw's construction methods, without any suggestion that Patton was attempting to expose illegality or fraud within the

10

meaning of the FCA, does not rise to the level of protected activity. *See United States ex rel. Owens v. First Kuwaiti General Trading & Contracting Co.*, 612 F.3d 724, 736 (4th Cir. 2010) (employee on a government-funded construction project was not engaged in protected activity where he merely complained of "construction mistakes" and improper construction methods, and where there was no evidence that the employee was concerned about fraud). Furthermore, "[a]n employer is entitled to treat a suggestion for improvement as what it purports to be rather than as a precursor to litigation," *Luckey v. Baxter Healthcare Corp.*, 183 F.3d 730, 733 (7th Cir. 1999), and allegations regarding construction methods do not demonstrate that Patton put Shaw on notice that he was investigating fraud against the government.

Without knowledge that Patton was investigating fraud, Shaw "could not possess the retaliatory intent necessary to establish a violation" of § 3730(h). *Robertson*, 32 F.3d at 952. To the contrary, Shaw produced an affidavit from the supervisor who fired Patton, as well as documentation from Patton's HR file, corroborating Shaw's contention that Shaw management did not have knowledge of any complaints about fraud, and that Patton was terminated after an altercation with his supervisors about a construction matter unrelated to his FCA allegations, rather than because anyone believed Patton was engaged in any activity in furtherance of FCA litigation. Patton's conclusory statement that he was wrongfully discharged after confronting his supervisor about Shaw's "false claims construction mistakes" is insufficient to raise a genuine dispute as to whether Shaw management retaliated against him "because of activities which the employer had reason to believe were taken in contemplation of a *qui tam* action against the employer." *McKenzie v. BellSouth Telecomms., Inc.*, 219 F.3d

No. 10-30376

508, 518 (6th Cir. 2000).  Accordingly, summary judgment in favor of Shaw was proper.

## III.  CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.