JAMES L. DENNIS, Circuit Judge,
concurring:
I concur in the court’s interpretation of the False Claims Act because that interpretation appears to be required by the text of the statute. However, I write separately to say, this interpretation, although apparently the correct one, leads to results that arguably are inequitable and at odds with the purpose of the statute. Thus, *164 consideration by Congress is warranted as to whether this result is what it intended.
The False Claims Act creates a cause of action for the United States to recover economic losses incurred from fraudulent claims for payment. 31 U.S.C. § 3729. The Attorney General pursues such actions on behalf of the government. Id. § 3730(a). Alternatively, under the statute’s “qui tam” provisions, private whis-tleblowers — “relators”—who have evidence of fraud against the United States may assert the government’s claim' on its behalf. Id. § 3730(b). As reward for doing so, the relators share in the government’s winnings, receiving a bounty of up to thirty percent of the government’s proceeds “depending upon the extent to which the person substantially contributed to the prosecution of the action.” Id. § 3730(d).[1] At issue in this case is the Act’s “alternate remedy” provision, § 3730(c)(5), which provides in the relevant part:
Notwithstanding subsection (b) [the qui tam provision], the Government may elect to pursue its claim through any alternate remedy available to the Government, including any administrative proceeding to determine a civil money penalty. If any such alternate remedy is pursued in another proceeding, the person initiating the action shall have the same rights in such proceeding as such person would have had if the action had continued under this section.
Id. § 3730(c)(5).
The first clause of § 3730(c)(5) provides simply that, notwithstanding the authority granted to relators to pursue qui tam suits under § 3730(b), the government retains authority (“the Government may elect”) “to pursue its claim [to recover for fraud] through any alternate remedy available to the Government.” In other words, under the first clause, the authority granted in § 3730(b) (the authority of relators to pursue qui tam suits) should not be read as implicitly restricting other similar authority (the authority of the government to pursue available alternate remedies). Cf., e.g., Christensen v. Harris Cnty., 529 U.S. 576, 583, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000) (discussing the canon of statutory interpretation providing that, “[w]hen a statute limits a thing to be done in a particular mode, it includes a negative of any other mode” (quoting Raleigh & Gaston R.R. Co. v. Reid, 80 U.S. 269, 270, 13 Wall. 269, 20 L.Ed. 570 (1871))).
The second clause of § 3730(c)(5) provides that, if the government does pursue an “alternate remedy” “in another proceeding,” then “the person initiating the action shall have the same rights in such proceeding as such person would have had if the action had continued under this section.” “The person initiating the action” refers to the relator (“the person”) who *165 initiates the qui tam suit under § 3730(b) (“the action”). “This section” refers, of course, to § 3730, which, inter alia, obligates the Attorney General to pursue False Claims Act suits for the government (§ 3730(a)), authorizes relators to pursue qui tam suits (§ 3730(b)), apportions authority between the government and relators (§ 3730(c)), and affords relators a bounty for their role in uncovering fraud against the government (§ 3730(d)). Accordingly, the second clause of § 3730(c)(5) provides that, if relators file a qui tam suit under § 3730(b), and the government, instead of participating in that suit, pursues an “alternate remedy” for recompense for the fraud, the relators retain “the same rights” they would have enjoyed if the government had intervened in their qui tam suit — most importantly, their right to a bounty, a fair share of the government’s proceeds. See also Gov’t’s Br. 19 (“The purpose of [§ 3730(c)(5) ] is to ensure that a relator who has filed a valid qui tam complaint is not deprived of the bounty prescribed by the statute if the government subsequently decides to seek an alternate remedy for the same fraudulent acts.”).
The issue in this case is whether § 3730(c)(5) affords relators the right to recover a fair share of money recovered by the government in “alternate remedy” proceedings that were instituted before the relators filed their qui tam suit? The court today holds that it does not: that, when the government pursues an “alternate remedy,” § 3730(c)(5) affords relators only the “same rights” as they would have had in an existing qui tam suit, not as they would have had in a hypothetical qui tam suit the relators could have filed (but did not) before the government pursued the “alternate remedy.” In other words, the court holds that, under § 3730(c)(5), if whistleblowers, like relator-appellants Samuel Babalola and Kayode Samuel Ade-tunmbi here, provide the government with their evidence of fraud but do not file a qui tam suit, and the government uses that information to pursue recompense for the fraud, the whistleblowers receive nothing from the government’s proceeds, even if they later retain an attorney and file a qui tam suit.
Section 3730(c)(5)’s text appears to mandate this result: it grants relators the “same rights” as they “would have had if [their qui tam suit] had continued under this section.” (Emphasis added.) A qui tam suit cannot “continue” until it has begun. If a qui tam suit does not begin, it cannot “continue,” and, thus, § 3730(c)(5) does not afford any rights.
Furthermore, this interpretation is consistent with § 3730(e)(3), which provides: “In no event may a person bring [a qui tam suit] which is based upon allegations or transactions which are the subject of a civil suit or an administrative civil money penalty proceeding in which the Government is already a party.” Under § 3730(e)(3), if whistleblowers provide the government with evidence of fraud but do not first file a qui tam suit, and the government then uses the whistleblowers’ information to file the government’s own False Claims Act suit (or other “civil suit” or “administrative civil money penalty proceeding”) before the whistleblowers file a qui tam suit, beating the whistleblowers in the “race to the courthouse” the whistle-blowers receive nothing under the False Claims Act. See Costner v. URS Consultants, Inc., 153 F.3d 667, 676 (8th Cir.1998) (“If the government files an action to enforce the [False Claims Act], a would-be relator may not later bring any action based on the same underlying facts.” (quoting United States ex rel. Kelly v. Boeing Co., 9 F.3d 743, 746 (9th Cir. 1993))). The statute gives them no rights (“In no event” may they maintain a qui *166 tam action as relators). Accordingly, if whistleblowers lose their right to a bounty when the government beats them in the race to the courthouse by filing the first False Claims Act suit, it follows that a similar result ensues when the government pursues an “alternate remedy” rather than a False Claims Act suit. After all, § 3730(c)(5) is intended to provide relators the “same rights” (emphasis added) as they would have had in the absence of the government’s pursuit of an “alternate remedy,” not to afford relators additional rights.
Thus, under § 3730(c)(5), as interpreted today, and § 3730(e)(3), if the government begins proceedings to recover recompense for fraud before the relators file a qui tam suit, then the False Claims Act gives the relators no award from the proceeds of the government’s action — even if the rela-tors made the government’s prosecution possible by uncovering the fraud to the government and further provided substantial assistance in the government’s prosecution.
Here, Babalola and Adetunmbi provided the government with evidence that their employers, two Texas doctors, had a long-running scheme of defrauding Medicaid and Medicare and had cost the government and private insurers tens of millions of dollars. Babalola and Adetunmbi could have withheld their information and allowed the fraud to continue while they searched for an attorney to represent their interests in a qui tam suit. But they did not — they took the path of the Good Samaritan and without delay provided the government with the evidence needed to pursue the defrauders. Using Babalola and Adetunmbi’s information, the government prosecuted the doctors for criminal fraud and obtained restitution and forfeiture orders from the court requiring the doctors to make recompense for the millions of dollars in losses. In addition to revealing the fraud to the government, Babalola and Adetunmbi further assisted the government’s pursuit of recompense by agreeing to serve as witnesses at trial and testify in support of the government’s case. For all their efforts, Babalola and Adetunmbi received nothing. Had Baba-lola and Adetunmbi first filed their qui tam suit before providing their information to the government, then they would have been entitled, under § 3730(d)(1), to an award of between fifteen to thirty percent of the government’s proceeds.[2] Did Congress really intend that, merely because Babalola and Adetunmbi lost to the government in the race to the courthouse, their substantial assistance is no longer worth fifteen to thirty percent, but zero?
We have said before that “[t]he purpose of the False Claims Act, of course, is to discourage fraud against the government, and the whistleblower provision is intended to encourage those with knowledge of fraud to come forward.” Robertson v. Bell Helicopter Textron, Inc., 32 F.3d 948, 951 (5th Cir.1994). But under § 3730(c)(5) and (e)(3), it would be foolish for whistle-blowers with knowledge of fraud to “come forward” with their information forthwith instead of withholding it from the government (and allowing the fraud to continue) until they first take however much time is needed, months or even years, to “lawyer up” and file a qui tam suit. If whistle-blowers selflessly report fraud to the government at the earliest possible time instead of delaying their action until they “lawyer up” and file their own suit, then, under § 3730(c)(5) and (e)(3), the government can-and, this case shows, will — deny to the whistleblowers the bounty that the False Claims Act otherwise promises and *167 provides. Did Congress really intend for the statute to favor self-interested whistle-blowers who delay uncovering fraud for selfish gain over the more civic-minded whistleblowers, like Babalola and Ade-tunmbi, who reveal fraud to the government and assist in the government’s investigation and prosecution at the soonest possible time? Compare United States v. Bank of Farmington, 166 F.3d 853, 866 (7th Cir.1999) (stating that the “intent” of the False Claims Act is “to encourage private individuals who are aware of fraud against the government to bring such information forward at the earliest possible time and to discourage persons with relevant information from remaining silent” (citation omitted)).
Although this result is arguably inequitable and illogical, it, nevertheless, appears mandated by the statute’s text. It bears consideration whether Congress truly intended and desires this policy.

. If the government does not intervene in the qui tam suit and the relators pursue the action alone, the award for the relators is between twenty-five and thirty percent of the proceeds, determined by the court based on what is "reasonable.” 31 U.S.C. § 3730(d)(2). If the government does intervene, the award to the relators is between fifteen and twenty-five percent of the proceeds "depending upon the extent to which the [the relators] substantially contributed to the prosecution of the action.” Id. § 3730(d)(1). However, when the qui tam suit is "based primarily on the disclosures of specific information (other than information provided by the [relators]) relating to allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media,” the award is no more than ten percent of the proceeds, determined by the court based on what is “appropriate,” “taking into account the significance of the information and the role of the [relators] in advancing the case to litigation.” Id.

. See supra, note 1.